*In re* ANTONIO GUZMÁN JUARBE, querellado.

Número 93.

*Sometido:* 2 de septiembre de 1958. *Resuelto:* 23 de septiembre de 1958.

*Santiago Polanco Abréu,* abogado del querellado; *Alfredo Archilla Guenard, Fiscal del Tribunal Supremo,* abogado de El Pueblo.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

En virtud de resolución nuestra de fecha 22 de julio de 1957, el Fiscal de este Tribunal presentó querella de desaforo contra el abogado Antonio Guzmán Juarbe, formulándole los siguientes cargos:

### "PRIMER CARGO

"6.—El querellado Antonio Guzmán Juarbe, voluntaria y maliciosamente, a sabiendas, violó el juramento que como abogado prestó el día 9 de abril de 1951, y específicamente el canon número 6 de los Cánones de Ética Profesional, 48 D.P.R. VIII, X, cuando dejó en completo estado de abandono e indefensión los intereses de su cliente Juan Carides Martínez, al asumir, sin el consentimiento de éste, la representación de otros intereses adversos y encontrados, radicando en corte posteriormente, en 9 de abril de 1956 una demanda en su contra, demanda esta relacionada con la misma transacción que dió origen a que dicho cliente contratara sus servicios profesionales; abusando además, de la buena fe de su cliente al utilizar al propio señor Carides Martínez para inducir a las demás personas lesionadas en el referido accidente a que también contrataran sus servicios profesionales, constándole al querellado que entre éstos y su cliente existían intereses encontrados y según revela el propio memorándum explicativo sometido por el querellado ante esta Hon. Superioridad, párrafos 2, 4 y 5, su actuación no estuvo predicada en un deseo de defender los mejores intereses de la justicia en general y de sus clientes en particular, sino que actuó movido por el beneficio económico personal que tal actuación le podría producir.

### "SEGUNDO CARGO

"7.—El querellado Antonio Guzmán Juarbe, voluntaria y maliciosamente, a sabiendas, violó las disposiciones de la ley que exige una autorización judicial para transigir y comprometer los intereses de un menor de edad, 31 L.P.R.A. sec. 786, página 536, al incluir, en el caso de *Segundo Laureano, et als.* v. *Juan Carides, et als.,* Civil núm. C.S.–56–329, sobre daños y

perjuicios, como codemandante al menor Juan López Varela, figurándolo en la demanda bajo su nombre y por su propia personalidad, la que por ley no tenía, a pesar de que el padre de dicho menor residía en Isabela, Puerto Rico, no lo hizo comparecer a nombre de y en representación de su menor hijo, tal como lo requiere la ley, dicho querellado, por el contrario, en unión a los abogados de la parte demandada, el día 26 de junio de 1956, suscribió y radicó en corte, a nombre y en representación de todos los demandantes, entre ellos el menor Juan López Varela, una moción sobre sentencia por estipulación, conviniendo con la otra parte en que a dicho menor la Great American Indemnity Company pague en resarcimiento de sus daños la suma de $100 y la U. S. Casualty Company la suma de $50, sin la correspondiente autorización judicial ,exigida por la ley en estos casos, el querellado permitió que el menor Juan López Varela, el día 29 de junio de 1956, cobrara el importe de sus daños así estipulados, firmando dicho menor personalmente en esa misma fecha el correspondiente relevo; no siendo hasta el día siguiente, 30 de junio de 1956, cuando el querellado Antonio Guzmán Juarbe, actuando esta vez como notario, preparó la escritura núm. 15 de fecha 30 de junio de 1956, sobre la emancipación de dicho menor por su padre Félix López Pérez; que tanto el hecho de la minoridad, así como el hecho de la emancipación le fueron ocultados al Tribunal Superior de Aguadilla, quien ignorando que entre los demandantes existía un menor de edad, dictó sentencia por estipulación, según los términos de la moción radicada, el día 12 de julio de 1956, resultando, que en cuanto al menor se refiere, por la actuación impropia del querellado, dicha sentencia anulable."

Contestó el querellado negando los cargos y estableciendo las siguientes

### "DEFENSAS ESPECIALES Y MATERIA NUEVA

"El compareciente en su afán de que este Hon. Tribunal tenga ante sí todos los datos, hechos y circunstancias en relación a sus actuaciones profesionales para con Juan Carides Martínez y los otros litigantes, envueltos en el accidente automovilístico ocurrido el día 5 de mayo de 1955, formula las siguientes defensas especiales e informa que sus actuaciones profesionales, en relación a su representación legal, se desarrollaron en la siguiente forma:

"A.—El señor Juan Carides Martínez visitó la oficina profesional del compareciente el día 26 de mayo de 1955. Solicitó sus servicios profesionales para que lo representara en un caso criminal ante el Tribunal de Distrito de Puerto Rico, Sala de Aguadilla en Isabela, por una supuesta infracción al Artículo 17(a) y (e) de la Ley de Automóviles y Tránsito para Puerto Rico. En esa fecha el señor Carides Martínez explicó al compareciente preliminarmente la forma en que había ocurrido el accidente. El compareciente accedió a representar al señor Carides Martínez en el caso criminal. El juicio oral estaba señalado para el 6 de junio de 1955.

"El compareciente asumió su representación gratuitamente ya que el señor Carides le expresó que lo contrataría para que lo representara en la reclamación civil que pudiera surgir como consecuencia del accidente. Con posterioridad al 26 de mayo de 1955 el compareciente, al organizar la prueba del caso criminal, se enteró que los testigos resultaban ser las personas que habían sufrido lesiones en el mismo accidente. Celebrada la vista del caso criminal el 6 de junio de 1955 el Tribunal absolvió libremente al señor Carides Martínez. Ese mismo día, después de celebrada la vista del caso criminal, el señor Carides Martínez y las otras personas lesionadas, visitaron al compareciente en su oficina de Isabela. Como consecuencia de la visita el compareciente aceptó la representación de Juan Carides y de los siete lesionados e inició las gestiones en el aspecto civil del caso. A este efecto escribió a los agentes aseguradores y sostuvo una entrevista en San Juan con funcionarios de la Compañía Carrión, Inc., aseguradora del camión con el cual había chocado el vehículo del señor Carides Martínez. Los funcionarios de dicha compañía aseguradora expresaron al compareciente que, de acuerdo con una investigación por ellos practicada, el responsable del accidente lo era únicamente el señor Carides Martínez. El compareciente practicó una investigación personal del accidente y llegó a la conclusión de que lo expresado por los agentes de la Compañía Carrión, Inc., era cierto. Surgía de esa conclusión un conflicto de intereses entre el señor Carides Martínez y los otros siete lesionados. El 6 de julio de 1955 el compareciente celebró una reunión en su oficina de Isabela con el señor Carides Martínez y las siete personas lesionadas. En esa entrevista el compareciente expresó que, habiendo un conflicto de intereses, él no continuaría representando al señor Carides Martínez y reco-

mendó a éste que obtuviera los servicios profesionales del Lic. José Veray, Jr. El 22 de septiembre de 1955 el compareciente escribió al señor Carides Martínez encareciéndole pasara por su oficina profesional de Isabela. El señor Carides compareció y el compareciente le expresó nuevamente que debía obtener los servicios de un abogado para que lo representara en la reclamación civil. El 11 de octubre de 1955 el compareciente escribió nuevamente al señor Carides Martínez encareciéndole estuviera en la oficina del Lic. José Veray, Jr., en Isabela, quien deseaba verle, el día 15 de octubre de 1955 a las 11 de la mañana. Con posterioridad al 15 de octubre de 1955 el señor Carides Martínez visitó nuevamente la oficina del compareciente insistiendo en que, a base de la explicación que le había dado el Lic. José Veray, Jr., el compareciente podía continuar representándolo en la reclamación civil. El compareciente le expresó categóricamente que estaba impedido de representarle porque estaba obligado a radicar una demanda contra él y la compañía aseguradora de su vehículo. En el mes de noviembre de 1955 el compareciente entregó todos los documentos al señor Carides y le ratificó el impedimento de representarlo y la obligación de radicar demanda contra de él.

"La demanda, en representación de las siete personas lesionadas, contra Carides Martínez y la compañía aseguradora de su vehículo y Valenciano González y la compañía aseguradora de su vehículo, fué radicada el 9 de abril de 1956 (civil número CS-56-329, Tribunal Superior de Puerto Rico, Sala de Aguadilla). El alguacil del Tribunal Superior, Sala de Aguadilla, emplazó personalmente al señor Carides Martínez el 29 de abril de 1956. En esa fecha faltaban seis días para que prescribiera la acción civil que tenía el señor Carides Martínez. Las compañías aseguradoras contestaron la demanda. El 26 de junio de 1956 se radicó una estipulación sobre sentencia por transacción suscrita por los abogados de las compañías aseguradoras y el compareciente. El tribunal dictó sentencia conforme a la estipulación radicada el día 12 de julio de 1956. Cada uno de los perjudicados recibió la participación fijada en la estipulación sobre sentencia por transacción.

"B.—El compareciente acepta, con toda honestidad, que al radicar la demanda hizo figurar a todos los demandantes como personas mayores de edad. El compareciente actuó a base de la información que recibió de los perjudicados. El compareciente acepta que el 26 de junio de 1956, al suscribir la esti-

pulación sobre sentencia por transacción, todavía hacía figurar a todos los demandantes como personas mayores de edad. El compareciente seguía actuando a base de la información que originalmente le habían dado los perjudicados. No fué hasta el 29 de junio de 1956 que el compareciente se enteró de que Juan López Varela era menor de 21 años de edad. En esa fecha se firmaron los relevos relacionados con las compañías aseguradoras de Valenciano González. No se firmó en esa fecha los relevos correspondientes a la otra compañía aseguradora. Ese día, 29 de junio de 1956, Juan López Varela no cobró el importe de la compensación que le correspondía, aunque sí firmó el relevo en favor de la Compañía Carrión. El compareciente acepta que no informó al Tribunal Superior de Puerto Rico, Sala de Aguadilla, de la situación existente con respecto al demandante Juan López Varela. Señala, no obstante, que al día siguiente, 30 de junio de 1956, el compareciente autorizó, como notario, la escritura núm. 15, siendo los comparecientes Félix López Pérez, padre de Juan López Varela, y el propio Juan López Varela. El día 30 de junio de 1956, después de otorgarse la escritura de emancipación, Juan López Varela recibió, por primera vez, parte de la compensación que le correspondía por concepto de los daños sufridos. El 12 de julio de 1956 el tribunal dictó sentencia aceptando la estipulación ofrecida. Para esa fecha ya Juan López Varela estaba emancipado. En momento alguno el compareciente tuvo el propósito deliberado de engañar al Tribunal. El compareciente creyó honradamente que una vez firmada la escritura de emancipación el demandante Juan López Varela estaba capacitado y que no era menester notificación alguna.

"Sostenemos que la sentencia del Tribunal Superior en lo que respecta al demandante Juan López Varela no es anulable. Si bien la demanda fue radicada y la estipulación suscrita por el compareciente alegando que dicho demandante era mayor de edad, éste no advino en la posesión de dinero alguno hasta después de haberse otorgado la escritura de emancipación y suscribió recibos que conserva el compareciente como prueba del pago recibido con posterioridad a la emancipación.

"C.—En toda la transacción relacionada con el accidente automovilístico de fecha 5 de mayo de 1955 el compareciente se limitó a cobrar los honorarios convenidos con sus representados y ninguno de dichos comparecientes sufrió pérdida económica de clase alguna.

"D.—El compareciente, para la fecha en que ocurrieron los hechos relatados, llevaba cuatro años en el ejercicio de su profesión.

"E.—La actuación del compareciente en toda la tramitación del caso estuvo siempre predicada en la buena fe. No existió nunca en su ánimo ni en su espíritu intención alguna de violar el juramento que prestara como abogado y como notario y respondió siempre su conducta al deseo de servir a sus representados con lealtad y honestidad. Esta aseveración se robustece por la posición asumida por el compareciente al someter su memorándum, de fecha 4 de septiembre de 1956, en respuesta a la carta de fecha 31 de agosto de 1956 que le enviara el Secretario Interino de este Hon. Tribunal.

"F.—El compareciente, consciente de su responsabilidad moral como abogado y notario en el ejercicio de su profesión entiende que, de existir alguna omisión o falta, de carácter técnico, en su actuación como profesional en la tramitación de este litigio, dichas faltas u omisiones nunca respondieron al interés de lucrarse económicamente o de lesionar los derechos de sus representados o de perjudicar los derechos o intereses de Juan Carides Martínez."

Por resolución de 23 de enero de 1958 nombramos al Juez Superior, J. Martín Almodóvar para actuar de *Master*, y oír y recibir toda la prueba que las partes tuvieran a bien presentar, certificándola y remitiéndola a este Tribunal con sus conclusiones de hecho.

Se celebraron vistas ante el *Master*, y éste, después de haber considerado la prueba oral y documental aducida por las partes, llegó a las siguientes conclusiones de hecho:

"El querellado Antonio Guzmán Juarbe es abogado admitido al ejercicio de dicha profesión el día 9 de abril de 1951 y el 20 de abril del mismo año al ejercicio del notariado. La ha practicado en el Estado Libre Asociado de Puerto Rico con oficina en el municipio de Isabela.

"El día 5 de mayo de 1955 mientras Juan Carides Martínez conducía un vehículo de su propiedad sufrió un accidente de automóvil, habiendo resultado lesionado él y los pasajeros, señores Víctor Monroig, Teodoro Concepción, Rosendo Monroig, Ramón Sánchez Pérez y Juan López Varela. Se formuló denun-

cia contra Juan Carides Martínez por infracción a la Ley de Automóviles. El acusado fué representado por el querellado y celebrado juicio el día 17 de junio de 1955 fué absuelto en esa misma fecha.

"Ese mismo día se reunieron en la oficina del querellado, Juan Carides Martínez y las demás personas que resultaron lesionadas en el accidente, quienes figuraban como testigos del pueblo en la denuncia que se le formulara a dicho acusado. El querellado aceptó representarlos obligándose éstos a pagarle un 30 por ciento de las cantidades que recibieran por concepto de daños. El contrato de servicios fué posteriormente enmendado. Los demandantes carecían de recursos económicos y no pudieron pagarle al querellado suma alguna para los gastos iniciales del pleito. Se obligaron a pagarle un 50 por ciento de las cantidades que se obtuvieran, obligándose el querellado a pagar todos los gastos que hubiera que incurrir hasta la terminación del litigio. La acción terminó mediante una estipulación de transacción de 26 de junio de 1956.

"Desde el 15 de junio de 1955 el querellado representó a Juan Carides Martínez, enviando una certificación a la U. S. Casualty Company, aseguradora del vehículo de éste, acompañando un informe del accidente.

"No fué hasta el 9 de abril de 1956 que se radicó la demanda a nombre de Juan López Varela y otros contra Juan Carides Martínez y otros. De la misma fué debidamente notificado dicho demandado por el alguacil Miguel Méndez Cabrera el día 28 de abril del mismo año, quien después de entregarle copia de la demanda y del emplazamiento, le informó que tenía que contestar la demanda dentro de diez días.

"Desde octubre de 1955 el Lic. Antonio Guzmán Juarbe informó a Juan Carides Martínez la necesidad que tenía de gestionar los servicios de otro abogado y le recomendó al licenciado José Veray, Jr. El querellado personalmente gestionó una entrevista entre dicho letrado y su cliente Juan Carides Martínez. A pesar de las gestiones del querellado éste nunca fué a la oficina del licenciado Veray, Jr.

"Desde el mes de octubre de 1955 a la fecha de la radicación de la demanda transcurrieron seis meses. Durante este tiempo el querellado estuvo haciendo gestiones de transacción a nombre de sus demás representados. Las compañías aseguradoras negaron responsabilidad en cuanto a Juan Carides Martínez, alegando que de conformidad con la investigación llevada a

cabo, él era responsable del accidente que motivaba la acción; surgiendo por lo tanto un conflicto entre los intereses de Juan Carides Martínez y los otros clientes del querellado.

"Juan Carides Martínez ratificó en más de una ocasión su conformidad en el sentido de que el querellado le representara a él y a los demás lesionados e insistió en que continuara siendo su abogado después que el Lic. Guzmán Juarbe le informó la existencia del conflicto. Asumió que el querellado seguía siendo su abogado y así lo entendió hasta el día 29 de junio de 1956 cuando se hizo efectivo el pago a los demandantes a virtud de una estipulación suscrita por las partes el día 26 de junio de 1956. En esta fecha se personó en la oficina del querellado para que se le hiciera entrega de su participación en la cuantía asignada por las compañías aseguradoras y fué en esta fecha que el querellado le hizo entrega de los papeles, documentos y demás pertenencias de dicho señor obrantes en la oficina del querellado.

"Después del 29 de junio de 1956 fué cuando por primera vez dicho señor Carides Martínez hizo gestiones de conseguir otro abogado. Al no conseguir los servicios de ninguno se querelló contra el Lic. Antonio Guzmán Juarbe ante el Honorable Tribunal Supremo de Puerto Rico.

"Con motivo de la querella, el 31 de agosto de 1956, el Honorable Tribunal Supremo se dirigió al querellado y éste sometió un memorial con fecha 4 de septiembre del mismo año haciendo una exposición de los hechos según los entendía el querellado. Se hizo la investigación correspondiente y como consecuencia de la investigación se formuló, el día 20 de septiembre de 1957, la querella que motiva este informe.

"II

"En relación con el segundo cargo, el examinador entiende probados los siguientes hechos:

"Al radicarse la demanda en el caso civil núm. 56–329 del Tribunal Superior de Puerto Rico, Sala de Aguadilla, suscrita por el querellado, Juan López Varela compareció y figuró como una persona mayor de edad. (Véase hecho primero de dicha demanda.) Para el 9 de abril de 1956 dicho Juan López Varela sólo tenía 18 años de edad.

"El querellado preparó el informe de accidente a nombre de Juan Carides Martínez para una de las compañías aseguradoras, la U. S. Casualty Co. En el mismo Juan López Varela

figura como de 36 años de edad. Esta información se la dió el asegurado. En el informe preparado por el Departamento de Policía figura dicho demandante con la edad de 36 años En el certificado preparado por el Dr. Elías Najul Bez el día 7 de junio de 1955, se hace constar que tenía 18 años de edad.

"El 26 de junio de 1956 el querellado, en representación y a nombre de todos los demandantes, entre los que figuraba el menor Juan López Varela, radicó una moción sobre sentencia por estipulación a virtud de la cual se convenía que la American Indemnity Co. pagaría a dicho menor la suma de $100 y la U. S. Casualty Co. la suma de $50 como pago de todos los daños sufridos por éste; y a virtud de dicha estipulación el 29 de junio de 1956 dicho menor suscribió personalmente el correspondiente relevo, todo ello sin que se solicitara la correspondiente autorización judicial del Tribunal Superior de Puerto Rico, Sala de Aguadilla.

"El mismo día 26 de junio de 1956 cuando se radicó la estipulación y se había figurado a Juan López Varela como mayor de edad y se había estipulado una transacción sin la previa autorización judicial, se había convenido, como parte de la transacción, el otorgamiento de una escritura de emancipación en cuanto a Juan López Varela, quien para esa fecha tenía 18 años de edad. (Véase memorándum del Lic. Aldrey que obra en el Exhibit B del querellante, de fecha 26 de junio de 1956.) Nótese que para la fecha en que se suscribió la estipulación el hecho de la minoridad era conocido también, por lo menos por uno de los abogados de los demandados. A pesar de este hecho y de haberse convenido el otorgamiento de tal escritura. el querellado no notificó ni informó al Tribunal Superior de Puerto Rico, Sala de Aguadilla, la minoridad de dicho Juan López Varela ni se solicitó de dicho tribunal la autorización judicial correspondiente a los fines de llevar a cabo la transacción. Cuando el querellado consintió en que dicho menor suscribiera un relevo le constaba que era menor de edad y que no podía realizar tal acto sin que se cumplieran los requisitos de ley. Al transigirse el pleito el querellado privó al Tribunal Superior, Sala de Aguadilla y al Fiscal de Distrito de ese tribunal de pasar sobre la utilidad y conveniencia para el menor de dicha transacción."

Concedimos diez días a las partes para que formularan objeciones al informe del *Master*, en caso de tener algunas.

El querellante compareció por escrito informando que no tenía objeciones que formular a las conclusiones de hecho del *Master*. El querellado no ha presentado objeciones a dichas conclusiones.

▇▇▇▇ El Canon 6 de los de "Ética Profesional que Regirán la Conducta de los Abogados de Puerto Rico" dispone:

"6. *Influencias Adversas e Intereses Encontrados.*—Es deber del abogado, al ser encargado de un asunto, el divulgar al cliente todas las circunstancias de sus relaciones con las partes, así como el interés que pueda tener en la controversia que pudiera influir al cliente en la selección de consejero.

"No es profesional el representar intereses encontrados excepto cuando se tenga el consentimiento expreso de todos los interesados, otorgado después de una información amplia de los hechos. Dentro del significado de esta regla un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber el contender por aquello a que deba oponerse en cumplimiento de sus obligaciones para con otro cliente.

"La obligación de representar al cliente con toda fidelidad y no divulgar sus secretos o confidencias prohibe también el que después se acepten igualas o empleos de otros en asuntos que afecten adversamente cualquier interés del cliente con relación al cual se hayan hecho confidencias." (¹) (48 D.P.R. VIII, X.)

Los tribunales han exigido a los abogados el más estricto cumplimiento de las obligaciones que les impone este canon. Las relaciones entre abogado y cliente están basadas fundamentalmente en una mutua confianza. Por eso es deber del abogado, al ser encargado de un asunto, el divulgar todas las circunstancias de sus relaciones con las partes, así como el interés que pueda tener en la controversia pues ello permite al cliente hacer la mejor y más consciente selección de consejero. El tercer párrafo del Canon 6 impone al abogado la obligación de guardar a su cliente la más estricta fidelidad, prohibiéndosele divulgar los secretos y las confidencias que aquél le ha hecho. Y esta prohibición continúa

---

(¹) El texto de este canon es idéntico al del Canon 6 de Ética Profesional del American Bar Association.

aun después de haber cesado las relaciones de abogado y cliente. De ahí que al abogado se le prohiba aceptar igualas o empleos de otros en asuntos que afecten adversamente cualquier interés de su anterior cliente con relación al cual se hayan hecho confidencias. La lealtad del abogado a su cliente en relación con los asuntos que éste le haya consultado o encargado su representación, es indivisible y continúa aun después de cesar entre ellos las relaciones de abogado y cliente. (²)

Han surgido algunas dificultades en la interpretación del Canon 6 cuando las cortes, en incidentes sobre descalificación de abogado, se han visto precisadas a decidir lo que es "cualquier interés del cliente con relación al cual se hayan hecho confidencias". Al problema se le han reconocido dos facetas, a saber: (1) Cuando el abogado actúa en contra del interés del cliente anterior en el mismo asunto o en la misma causa de acción. En tales casos las cortes han descalificado al abogado para continuar representando al nuevo cliente independientemente de que haya o no recibido información confidencial del anterior cliente; y (2) cuando el abogado actúa en contra de los intereses del anterior cliente en un asunto o causa de acción diferente y en el cual información confidencial revelada por el primer cliente puede o no ser de importancia. Bajo esta categoría es que han surgido las mayores dificultades. Algunas cortes han exigido al primer cliente que revele la información confidencial que habrá de ser usada en su contra, antes de proceder a excluir al abogado del caso. Otras cortes han adoptado un punto de vista contrario fundándose precisamente en que obligar al cliente revelar la información confidencial equivaldría a descubrir aquéllo cuya secretividad la regla trata de proteger. (³)

(²) *Wutchumna Water Co.* v. *Bailey,* 15 P.2d 505; *United States* v. *Bishop,* 90 F.2d 65; *Watson* v. *Watson,* 11 N.Y.S.2d 537.

(³) Véase el comentario al caso de *T. C. & Theatre Corp.* v. *Warner Bros. Pictures, Inc.,* 113 F. Supp. 264 en Rocky Mt. L. Rev. (University of Colorado School of Law), Vol. 26, pág. 195 y *Attorney Disqualified Where Past Legal Association Result in Conflict of Interests,* Syracuse L. Rev., Vol. 6, No. 2, pág. 360.

En un incidente para descalificar un abogado que anteriormente había sido abogado del demandante, en *Lamb* v. *Isley*, 114 S.W.2d 673, se cita con aprobación el siguiente lenguaje de la Corte Suprema de Illinois:

"Es regla firmemente establecida que un abogado no puede representar intereses opuestos o tratar de llevar a cabo deberes inconsistentes. Una vez que se contratan sus servicios y tiene la confianza del cliente, no puede prestar servicios a otros cuyos intereses sean opuestos a los de su cliente, o tomar asuntos tan estrechamente relacionados con los de su cliente o los de su antiguo cliente que en efecto sean parte de ellos. Weeks *on Attorneys*, 2d ed. secs. 120, 271; 1 Thornton *on Attorneys*, sec. 174. Esta es una regla inflexible, destinada a impedir una conducta fraudulenta en el abogado deshonesto y también a evitar que el abogado honesto se sitúe en una posición en la cual se vea obligado a escoger entre deberes en conflicto. Él no debe aceptar empleos opuestos, no importa cuán honestos sean sus motivos e intenciones. *Strong* v. *International Bldg., etc., Union*, 183 Ill. 97, 55 N.E. 675, 47 L.R.A. 792. Él debe a su cliente fidelidad, discreción, diligencia, y habilidad profesional, y no puede aceptar remuneración alguna de la parte contraria. Como regla general a él no le está permitido divulgar información y secretos que le comunicara su cliente o que él obtuvo durante las relaciones profesionales de ambos, a menos que sea autorizado para ello por el propio cliente. *Hatch* v. *Fogerty*, 40 How. Prac. (N.Y.) 492. Enaltece a la profesión legal el que su fidelidad hacia sus clientes sea cosa de la cual se pueda depender; el que un hombre pueda acudir a un abogado y sin peligro alguno conversar con él respecto a sus derechos en litigio y tener la absoluta confianza de que el abogado guardará silencio. *United States* v. *Costen* (C.C.), 38 F. 24. Esta regla se ha puesto en vigor tan rigurosamente, que se ha sostenido que una vez que un abogado termina de prestar sus servicios, no puede luego actuar como abogado contra su antiguo cliente en cuanto al mismo asunto general, aunque mientras trabajaba para su antiguo cliente no hubiera él adquirido información alguna que pudiera operar en perjuicio de ese cliente en el empleo opuesto posterior."

Véase además *Consolidated Theatres* v. *Warner Bros. Cir. Man. Corp.*, 216 F.2d 920; *Legal Ethics*, pág. 104, *et seq.*,

Henry S. Drinker; *Organization and Ethics of the Bench and Bar*, Frederick C. Hicks, págs. 341–360.

Las Reglas de Conducta Profesional de California contienen una prohibición similar a la del tercer párrafo del Canon 6 en lo que respecta a la aceptación por el abogado de empleos de otro en asuntos que afecten adversamente cualquier interés del cliente con relación al cual se hayan hecho confidencias.[4]   En *Galbraith* v. *State Bar of California*, 23 P.2d 291, citado luego con aprobación en *Sheffield* v. *State Bar of California*, 140 P.2d 376, se encontró culpable a un abogado de haber violado la mencionada Regla de Conducta Profesional porque después de haber representado a dos clientes en casos criminales seguidos contra ellos, instó demanda a nombre de otros contra dichos clientes en reclamación de daños y perjuicios basada dicha acción civil en los mismos hechos o accidentes que motivaron las acciones criminales.   En dicho caso dijo la corte a la pág. 292:

"La interpretación razonable de esta regla sugiere que la posterior representación de un cliente en contra de otro anterior está prohibida no meramente cuando al abogado se le requiera que use información confidencial obtenida durante su anterior empleo, sino también en todo caso en que, por razón del posterior empleo, pueda él ser requerido a que haga uso de dicha información confidencial.   En el inciso 5, sección 282 del Código de Procedimiento Civil, se declara que es deber de un abogado 'mantener inviolable la confianza y, aun en perjuicio propio, guardar los secretos de su cliente'.   Véase también, *Anderson* v. *Eaton,* 211 Cal. 113, 293 P. 788.   En el caso de *Wutchumna Water Co.* v. *Bailey,* 216 Cal. 564, 15 P.2d 505, 509, se establece que 'a un abogado se le prohibe hacer una cualquiera de dos cosas al terminar él de prestar sus servicios a un antiguo cliente.   No hacer nada que pueda afectar perjudicialmente a su antiguo cliente en ningún asunto en que

---

[4] La Regla 5 de las Reglas de Conducta Profesional de California dispone:

"Un miembro del Bar del Estado no aceptará empleo adverso a un cliente o cliente anterior que se relacione con cualquier asunto con referencia al cual él haya obtenido información confidencial por razón de o en el curso de su empleo por dicho cliente o cliente anterior."

él lo había representado, ni usar contra su anterior cliente, en momento alguno, conocimiento o información que adquirió en virtud de la relación anterior'. Las circunstancias que dan lugar a los dos primeros cargos de conducta impropia son tales que pueden insinuar o indicar que el peticionario en el curso de la acción de daños y perjuicios hizo uso de información que él adquirió mientras representaba a los respectivos demandados en los procesos criminales anteriores.''

Los hechos probados, de acuerdo con las conclusiones de hecho del *master*, son suficientes para establecer que la conducta observada por el querellado en este caso constituye una violación de las obligaciones que le impone el párrafo tercero del Canon 6 de Ética Profesional. Dicho abogado asumió la representación y representó a Juan Carides Martínez en el proceso criminal instituído contra éste por Infracción a la Ley de Automóviles con motivo de un accidente de automóvil ocurrido mientras Carides Martínez conducía un automóvil de su propiedad y en el cual accidente resultaron lesionadas varias personas. Carides Martínez fué absuelto en el juicio criminal. El querellado asumió la representación de Carides y los pasajeros lesionados para establecer una reclamación de daños y perjuicios fundada en los mismos hechos que dieron lugar al proceso criminal contra Carides. Posteriormente el querellado informó a Carides que no podía asumir su representación en la referida acción civil y procedió a radicar una demanda, a nombre de los pasajeros lesionados, contra dicho Juan Carides Martínez y otras personas. Es decir, el querellado interpuso una acción contra su anterior cliente Carides, fundada en los mismos hechos o accidente envuelto en la acción criminal en la cual él representó a Carides. Esto, de acuerdo con el párrafo tercero del Canon 6, él no podía hacerlo. El hecho de que el querellado informara a Carides que no podía representarlo en la acción civil y el hecho además de que Carides consintiera en que dicho abogado le representara a él y a los pasajeros lesionados, no le eximía de abstenerse de proseguir un pleito civil contra Carides, en perjuicio de los intereses de éste,

fundado o basado en el mismo accidente. No hay duda de que al así hacerlo, el querellado asumió posiciones inconsistentes. En la acción criminal defendió a Carides y obtuvo su absolución. En la acción civil asumió la posición de que Carides era responsable de los daños causados a los pasajeros y por lo tanto que, dichos daños se causaron por su culpa o negligencia.

Tampoco podemos tener duda que en la acción criminal, seguida contra Carides, el querellado obtuvo o debió obtener de éste información de carácter confidencial, que bien pudo utilizarla en su contra en la acción civil.

No se trata pues de un caso en que el abogado comete una infracción involuntaria del Canon 6 de Ética Profesional. Por el contrario, el querellado, luego de defender a Carides en la acción criminal y de haber aceptado representarlo también en la acción civil, se dió cuenta de que existía un conflicto de intereses entre Carides y los pasajeros lesionados a quienes él también representaba. En ese momento la obligación profesional del querellado, según lo prescrito en el Canon 6, era renunciar inmediatamente la representación de todos los pasajeros lesionados. Sin embargo, a sabiendas de que existía el conflicto de intereses antes indicado, el querellado prosiguió el pleito civil a nombre de los pasajeros lesionados en contra de Carides y se limitó a informarle a éste que no podía representarlo en la acción civil y que buscara otro abogado. Aunque los hechos demuestran que el querellado no actuó de mala fe, sino más bien por ignorancia de sus deberes profesionales, esto no le exime de responsabilidad. Resolvemos, por tanto, que el primer cargo fue probado.

El segundo cargo también quedó probado. Como bien concluye el *Master*, cuando el querellado radicó en corte la moción sobre sentencia por estipulación a nombre de todos los demandantes, entre los que figuraba un menor de edad, Juan López Varela, hecho éste conocido entonces por el querellado y del cual no dió conocimiento al tribunal, privó a

éste de pasar sobre la necesidad y conveniencia para el menor de dicha transacción. Véase *Cruz* v. *Central Pasto Viejo*, 44 D.P.R. 367. No podemos sancionar la conducta observada por el querellado. Él faltó al cumplimiento de sus deberes y obligaciones para con el cliente y para con el tribunal.

Considerando que el querellado es un abogado relativamente joven en el ejercicio de la profesión; que no actuó de mala fe al incoar la acción civil contra su anterior cliente Juan Carides Martínez, ni que hay indicios de fraude en la transacción del pleito por el menor Juan López Varela, así como las demás circunstancias concurrentes, *el Tribunal resuelve suspender al querellado del ejercicio de la abogacía por el término de seis meses.*