EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:  Arnaldo Báez Genoval | 2008 TSPR 177  175 DPR ____ |
|---|---|

Número del Caso: CP-2006-24

Fecha: 12 de noviembre de 2008

Oficina del Procurador General:

Lcda. Noemí Rivera De León
Procuradora General Auxiliar

Abogado de la Parte Querellada:

Lcdo. Luis F. Camacho

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


INTEGRACION DE SALA


ORDEN


San Juan, Puerto Rico, a 12 de noviembre de 2008.

Debido a la no intervención de la Jueza Asociada señora Rodríguez Rodríguez, se constituye una Sala Especial integrada por el Juez Presidente señor Hernández Denton, el Juez Asociado señor Rivera Pérez y la Jueza Asociada señora Fiol Matta para entender y disponer del caso CP-2006-24 In re: Arnaldo Báez Genoval

Lo decretó y firma.


Federico Hernández Denton
Juez Presidente


Certifico:


Dimarie Alicea Lozada
Secretaria del Tribunal Supremo, Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

CP-2006-24

Arnaldo Báez Genoval

SALA ESPECIAL INTEGRADA POR EL JUEZ PRESIDENTE SEÑOR HERNANDEZ DENTON, EL JUEZ ASOCIADO SEÑOR RIVERA PEREZ Y LA JUEZA ASOCIADA SEÑORA FIOL MATTA.

PER CURIAM

San Juan, Puerto Rico, a 12 de noviembre de 2008

I

Los hechos medulares del presente procedimiento disciplinario no están en controversia por haber sido estipulados por las partes. Veamos.

El pasado 20 de octubre de 2003, tras realizar una auditoría en el Municipio de Vieques, en adelante Municipio, el Contralor del Estado Libre Asociado de Puerto Rico, Hon. Manuel Díaz Saldaña presentó ante esta Curia una queja jurada contra el Lic. Arnaldo Báez Genoval por posible violación al Canon 21 del Código de Ética Profesional, *supra*. En la referida queja, el Contralor señaló que el

licenciado Báez Genoval incurrió en representación simultánea adversa y en representación sucesiva adversa al éste representar al Municipio en una demanda contra quienes fueran sus representados y codemandados en el mismo pleito.[1]

En su contestación a la queja[2], el licenciado Báez Genoval admitió que en enero de 1999 asumió la representación legal del Sr. Manuel Medina Rucci y del Sr. Francisco Rivera Cruz. Respecto al señor Medina Rucci, el letrado expresó que tras solicitar prórroga, contestó la demanda pero que posteriormente se percató que el Lic. Ángel Pabón Mediavilla había asumido la representación legal de éste, por lo que presentó una moción de renuncia de representación legal el 10 de mayo de 1999.[3]

En lo que concierne al señor Rivera Cruz, el licenciado Báez Genoval arguyó que contestó la demanda el 20 de noviembre de 1999 y en ella alegó que su representado había residido en los terrenos en controversia por más de

---

[1] En el 1998, el Municipio de Vieques presentó demanda aduciendo que el predio de terreno donde residían los demandados era de su propiedad mientras que los demandados aducían que habían vivido en dicho lugar por más de treinta (30) años.

[2] Conviene indicar, además, que el licenciado Báez Genoval expuso en su contestación a la queja que el Contralor, Manuel Díaz Saldaña no tenía legitimación activa para presentar una queja en su contra. No obstante, éste desistió de dicho planteamiento a la luz de la jurisprudencia emitida por este Tribunal.

[3] La moción de renuncia de representación legal fue declarada ha lugar por el foro primario el 27 de mayo de 1999. En vista de lo anterior, el licenciado Báez Genoval le devolvió al señor Medina Rucci $200.00 que éste le había entregado como parte de sus honorarios. Es menester señalar, que el licenciado Báez Genoval arguye en su contestación a la queja, que nunca obtuvo confidencias ni información privilegiada por parte del señor Medina Rucci.

treinta (30) años. Al año siguiente, el 30 de noviembre de 2000, el abogado querellado presentó una moción de renuncia de representación legal, <u>la cual fue declarada ha lugar por el tribunal *a quo* el 17 de enero de 2001</u>. La razón articulada por el letrado en la referida moción fue que comenzaría a fungir como Asesor Legal del Municipio. De hecho, éste comenzó a trabajar como asesor legal del Municipio el 9 de enero de 2001. Cabe señalas que el contrato de servicios profesionales suscrito por el licenciado Báez Genoval y el Municipio expiró el treinta (30) de junio de 2001.

De los hechos relatados se desprende que el licenciado Báez Genoval comenzó a trabajar con el Municipio ocho (8) días antes que el foro primario aceptara su renuncia a la representación legal del señor Rivera Cruz. Por tanto, durante ese breve transcurso de tiempo el licenciado Báez Genoval fue simultáneamente abogado del Municipio demandante y del codemandado señor Rivera Cruz.

Posteriormente, el 11 de abril de 2001, el abogado querellado compareció, en representación del Municipio, ante el tribunal para solicitar la desestimación sin perjuicio del caso incoado contra quienes eran sus representados. Ello en vista de que el Municipio adoptó una nueva política pública en torno al predio de terreno que ocupaban los codemandados.

A raíz de estos hechos y luego de efectuar la correspondiente investigación, el Procurador General presentó su Informe en donde concluyó que el licenciado Báez Genoval incurrió en posible violación a los cánones 21 y 38

de Ética Profesional, *supra*. El Procurador General sostuvo, entre otras cosas, que el letrado incurrió en un potencial conflicto de intereses, al comparecer al tribunal como abogado del Municipio, a los fines de solicitar la desestimación sin perjuicio del caso incoado contra quienes fueran sus clientes.

Contrario a lo argumentado por el Procurador General, el licenciado Báez Genoval expuso en su contestación al Informe que él no había violado los cánones 21 y 38 de Ética Profesional puesto que en ningún momento asesoró al Municipio sobre la causa de acción instada contra quienes eran sus clientes. Señaló, además, que no intervino con la aprobación y puesta en vigor de la nueva política pública delineada por la Asamblea Municipal del Municipio en torno a los predios de terreno que originaron la controversia. Finalmente, arguyó que no incurrió en un potencial conflicto de intereses al presentar la moción de desistimiento sin perjuicio puesto que no existían intereses adversos entre el Municipio y quienes eran sus representados.

Posteriormente le ordenamos al Procurador General presentar querella contra el licenciado Báez Genoval. En cumplimiento con la referida orden, el Procurador General presentó la querella contra el letrado, y le imputó dos (2) cargos por violación a los cánones 21 y 38 del Código de Ética Profesional. Por su parte, en su contestación a la

querella, el licenciado Báez Genoval reprodujo los argumentos esbozados en su contestación al Informe.

Así las cosas, nombramos Comisionada Especial a la Lcda. Eliadis Orsini Zayas, Ex Jueza del Tribunal de Primera Instancia para que aquilatara la prueba, formulara determinaciones de hechos y sometiera las recomendaciones que estimara pertinentes. El 5 de mayo de 2008, la Comisionada Especial sometió ante este Tribunal un extenso informe. En el mismo, luego de narrar los hechos previamente esbozados, concluyó que la querella instada en contra del licenciado Báez Genoval debía ser desestimada toda vez que, a su entender, éste "nunca había representado intereses en conflicto, ni opuestos en conflicto ni siquiera en grado de apariencia".[4]

Contando con la comparecencia de ambas partes, el caso quedó sometido en los méritos. Pasamos a resolver.

## II

Como es sabido, el Canon 21 del Código de Ética Profesional, *supra*, versa sobre el tema de los intereses encontrados en la relación abogado-cliente. En lo pertinente, el referido canon dispone lo siguiente:

> **El abogado tiene para con su cliente un deber de lealtad completa.** Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales. **No es propio de un profesional el representar intereses encontrados.** Dentro del significado de esta regla, un abogado representa intereses

_____

[4] Informe de la Comisionada Especial, pág. 41.

> encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.
> La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aún cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste. [...] (Énfasis suplido.)

Como se puede apreciar, el Canon 21 le impone al abogado un deber de completa lealtad hacia su cliente. La finalidad de la referida norma deontológica es "reglamentar la conducta profesional que, de alguna forma, pueda poner en peligro el principio de confidencialidad que caracteriza la relación fiduciaria de abogado-cliente, y de esa forma menoscabar la imagen de la justicia y la confianza que tiene el ciudadano en el sistema".[5]

Reiteradamente hemos resuelto que el Canon 21 del Código de Ética Profesional, *supra*, preceptúa tres situaciones que los togados deben evitar toda vez que representan un conflicto de intereses que quebranta el deber de lealtad e impide que el abogado ejerza una representación adecuada y transparente para su cliente.

---

[5] *In re Ortiz Mártinez*, 161 D.P.R. 572, 579 (2004).

La primera de esas situaciones es la <u>representación</u> <u>simultánea de clientes</u>, en donde en beneficio de un cliente el letrado tiene que necesariamente defender aquello a lo cual debe oponerse en cumplimiento de sus obligaciones hacia otro cliente suyo. Ahora bien, para que dicha prohibición se active es imperativo que exista una relación abogado cliente dual.[6] Mediante la prohibición a la representación simultánea de clientes, se busca preservar la autonomía del juicio del abogado y prevenir cualquier tipo de dilución de la fidelidad que el abogado debe a su cliente.[7] Es por ello que el abogado no puede exponer como justificación para salvar tal conflicto de interés, que no habrá de utilizar las confidencias o secretos de un cliente en perjuicio de su otro cliente.[8] Por tal razón, hemos resuelto reiteradamente que ante un potencial o actual conflicto de intereses, el togado está obligado a renunciar a ambas representaciones.[9]

De otra parte, presenta un grave conflicto de intereses la <u>representación sucesiva adversa</u>, en la cual el abogado acepta la representación de un cliente sobre asuntos que pueden afectar adversamente los intereses de un cliente anterior. Sobre este particular, hemos establecido que es necesaria la existencia de

---

[6] <u>In re Torres Viera</u>, res. 20 de febrero de 2007, ___ D.P.R.___; 2007 T.S.P.R. 57.

[7] <u>In re Carreras Rovira y Suárez</u>, 115 D.P.R. 778, 789 (1984).
[8] <u>In re Carreras Rovira y Suárez</u>, *supra*; <u>In re Concepción Suárez</u>, 111 D.P.R. 486, 491 (1981).

[9] <u>Liquilux Gas. Corp. v. Berríos, Zaragoza</u>, 138 D.P.R. 850, 859 (1995).

una relación abogado-cliente para que se active dicha prohibición.[10]  Al igual que sucede en la representación simultánea de clientes, en este caso, el togado tampoco podrá aducir que no utilizará las confidencias de sus clientes en perjuicio de éstos.  Tal prohibición es insoslayable por lo que los clientes no podrán consentir a la representación conflictiva.

En In re Carreras Rovira y Suárez Zayas, *supra*, pág. 792 resolvimos que surge una presunción irrefutable de que la información confidencial provista por el cliente anterior al letrado, será utilizada por éste en beneficio del nuevo cliente, cuyos intereses son antagónicos a los del cliente anterior. En vista de lo anterior, ante un potencial o actual conflicto de intereses el abogado está obligado a renunciar a la representación legal del nuevo cliente.

En aras de determinar si un abogado incurrió en la representación sucesiva de intereses encontrados, es preciso analizar la conducta de éste a la luz del criterio de relación sustancial. A tenor con dicho criterio, el cliente sólo tiene que demostrar que la controversia legal en la que el abogado comparece en su contra está sustancialmente relacionada con la causa de acción en la que el abogado previamente le representó.[11]  Es por ello, que el cliente no tiene que probar que hubo una violación al principio de confidencialidad.

---

[10] In re Soto Cardona, 143 D.P.R. 50, 55-56 (2004).

[11] Véase In re Carreras Rovira y Suárez, *supra,* pág. 791.

En resumidas cuentas, cuando un abogado incurre en representación sucesiva adversa, el cliente tiene que demostrar que el abogado mantuvo una relación de abogado-cliente con un cliente que al presente tiene una controversia con otro cliente que él representa; que la representación legal de su cliente anterior está sustancialmente relacionada con la representación profesional de su cliente actual; y que la representación legal actual resulta adversa a los intereses de su cliente original.[12]

Por otra parte, la tercera situación que presenta intereses encontrados surge cuando un abogado acepta la representación legal de un cliente, conociendo que su juicio profesional puede verse afectado por sus intereses personales.

Dado que en el día a día se pueden presentar innumerables situaciones que pueden desembocar en un potencial o real conflicto de interés, **es preciso que el letrado resuelva las dudas de índole ético profesional con rigurosidad contra sí mismo.**[13] De esta forma, se evitan situaciones ignominiosas para la profesión legal que socavan la confianza de la ciudadanía. Debemos puntualizar, además, que la **lealtad y la confidencialidad del abogado hacia su cliente** en relación con los asuntos que éste le haya consultado o si le ha

---

[12] In re Ortiz Martínez, 161 D.P.R. 572 (2004). (Énfasis suplido). Véase además In re Carreras Rovira y Suárez, *supra*; Eliane Exp. Ltd. V. Maderas Alfa, Inc., 156 D.P.R. 532 (2000).
[13] In re Carreras Rovira y Suárez, *supra*. Veáse, además, In re Valentín González, 115 D.P.R. 68 (1984).

encargado su representación, es indivisible y **continúa aún después de cesar entre ellos la relaciones de abogado cliente.**[14]

Finalmente, antes de pasar a los méritos de la presente querella, es preciso puntualizar la relación entre el Canon 21 y 38 del Código de Ética Profesional.[15]

El Canon 38 del Código de Ética Profesional preceptúa una máxima de suma importancia para el ordenamiento deontológico de la profesión legal. Dicho canon puntualiza, *inter alia*, que **"[e]l abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque al así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia."** (Énfasis suplido).

El referido canon establece que los abogados deben eludir aquellas situaciones que puedan dar la apariencia de conducta profesional impropia. Respecto a éste particular, en In re Morell Corrada y Alcover García, resolvimos que un abogado tiene la obligación de evitar, tanto en la realidad como en la apariencia, la impresión de conducta conflictiva y tienen el deber de lucir puro y libre de influencias extrañas a su gestión profesional.[16]  Por tal razón, cuando un abogado asume una representación simultánea de clientes o una representación sucesiva adversa que resulta en un real o potencial conflicto de

---

[14] In re Carreras Rovira y Suárez, *supra*, a la pág. 785. (Énfasis suplido.) Veáse también In re Guzmán, 80 D.P.R. 713, 723 (1958). Ex parte Robles Sanabria, 133 D.P.R. 739, 745 (1993).

[15] 4 L.P.R.A. Ap. IX, C. 21, C.38
[16] 158 D.P.R. 791, 811 (2003). (Énfasis suplido).

intereses, dicho abogado incurre en conducta violatoria de los Cánones 21 y 38 del Código de Ética Profesional.[17]

## III

Contrario a la determinación de la Comisionada Especial, luego de analizar cuidadosamente el expediente de la presente querella, concluimos que el licenciado Báez Genoval incurrió en conducta violatoria de los Cánones 21 y 38 del Código de Ética Profesional.[18] Veamos.

De los hechos reseñados, surge claramente que el licenciado Báez Genoval incurrió en una representación simultánea adversa al comenzar a trabajar como Asesor Legal del Municipio mientras era abogado del señor Rivera Cruz en el pleito en el que éste figuraba como demandado y el Municipio como demandante. Aunque el abogado querellado presentó moción de renuncia a la representación legal del señor Rivera Cruz el 30 de noviembre de 2000, no fue hasta el 17 de enero de 2001 que el Tribunal de Primera Instancia la declaró ha lugar.

En el ínterin, el 9 de enero de 2001, el letrado comenzó a trabajar como Asesor Legal del Municipio. Evidentemente el licenciado Báez Genoval representó simultáneamente intereses encontrados. Ello es así aunque tal situación haya perdurado solamente ocho (8) días. Si el foro primario no hubiese aceptado la renuncia a la

---

[17] In re Torres Viera, *supra*; In re Vélez Barlucea, 152 D.P.R. 298 (2000).

[18] 4 L.P.R.A. Ap. IX, C. 21 y C. 38.

representación legal del señor Rivera Cruz o la hubiese declarado ha lugar más tarde, el abogado querellado habría tenido a su cargo dos representaciones simultáneas adversas.

Por su parte, la Comisionada Especial concluyó en su Informe que el licenciado Báez Genoval no incurrió en una representación simultánea adversa puesto que las representaciones de ambos clientes no resultaban conflictivas ni adversas ya que había ocurrido un cambio de administración en el Municipio, el cual establecería una nueva política pública que favorecía la posición de los demandados. No podemos endosar tal determinación.

El mero hecho de que la nueva administración del Municipio pretendía adoptar una nueva política pública que favorecía a los demandados, no es excusa ni autorizaba al licenciado Báez Genoval a ser abogado de dos partes, que en ese momento, todavía tenían intereses antagónicos. Por tanto, cabe concluir que el licenciado Báez Genoval violó los Cánones 21 y 38 del Código de Ética Profesional.

En In re Vélez Barlucea, *supra*, nos enfrentamos a una situación un tanto similar. En esa ocasión, amonestamos al licenciado Vélez Barlucea pues éste siendo Asesor Legal del Municipio de Adjuntas, asesoró y ayudó en la redacción de la demanda incoada por una persona en contra del Municipio. Resolvimos, además, que los abogados tienen el deber de evitar conflictos de intereses potenciales. En el presente caso, el licenciado Báez Genoval tenía la obligación de evitar una situación, que a todas luces, evidenciaba un conflicto de intereses y apariencia de conducta impropia.

Nos resta determinar entonces si el licenciado Báez Genoval incurrió en representación sucesiva adversa.

En su Informe, la Comisionada Especial razonó que el letrado no incurrió en una representación sucesiva adversa puesto que el licenciado Báez Genoval no llevó a cabo gestión alguna en contra de sus clientes y compareció solamente al tribunal, en representación del Municipio, para desistir sin perjuicio del pleito, lo que favorecía a quienes eran sus representados.

A diferencia del razonamiento expuesto por la Comisionada, el Procurador General arguyó que el licenciado Báez Genoval incurrió en representación sucesiva adversa al comparecer al tribunal para presentar una moción de desistimiento ya que ello creaba un potencial conflicto de intereses. Señaló, además, que el abogado querellado asesoró legalmente al Municipio sobre la demanda en contra de sus anteriores clientes pues éste facturó tres (3) horas por el estudio y preparación del referido caso.

Al examinar el expediente del caso de autos, nos percatamos que el 30 de marzo de 2001, el licenciado Báez Genoval le envió al Municipio una factura por servicios profesionales prestados, en donde detalla que el 12 de marzo de 2001 facturó tres (3) horas por el estudio y análisis del caso en el que representó inicialmente a la parte adversa. Tal situación es insostenible e impermisible pues creó un actual y real conflicto de intereses.

Aunque el licenciado Báez Genoval aduce en sus escritos que nunca asesoró al Municipio sobre dicho caso, no podemos ignorar el hecho de que él facturó tres (3) horas por el estudio del

mismo. Ello necesariamente conlleva algún tipo de servicio profesional rendido al Municipio sobre la referida causa de acción en donde sus anteriores clientes eran los codemandados. Además, no importa aquí que el abogado querellado haya o no asesorado al Municipio sobre el referido caso, dado que surgió un conflicto de intereses.

Finalmente, es menester señalar que la comparecencia del abogado querellado al tribunal para desistir sin perjuicio del pleito, creo apariencia de conducta profesional impropia puesto que se presentó ante el tribunal como abogado de la parte demandante para desistir del pelito contra quienes eran sus clientes. Dicho proceder viola el Canon 38 del Código de Ética Profesional.

## IV

Tras concluir que el licenciado Báez Genoval incurrió en conducta violatoria de los Cánones 21 y 38 de Ética Profesional, procede determinar la sanción disciplinaria a imponer. Antes de disciplinar a un abogado por las violaciones cometidas a nuestro ordenamiento deontológico, es preciso considerar los siguientes factores: la buena reputación del abogado en la comunidad, su historial previo, si ésta constituye su primera falta y ninguna parte ha resultado perjudicada, la aceptación de la falta y el sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medie de su actuación, el resarcimiento al cliente y, cualesquiera otras

conmiseraciones, ya bien atenuantes o agravantes, que medien a tenor de los hechos.[19]

En vista de que el licenciado Báez Genoval goza de buena reputación en su comunidad, es su primera falta, sus clientes no presentaron queja contra él y ninguna de las partes resultó perjudicada por su actuación, limitamos la sanción a imponerse a una **censura severa**, apercibiéndolo de que en el futuro deberá observar y cumplir cabalmente las disposiciones del Código de Ética Profesional.

## IV

Por los fundamentos antes expuestos, censuramos severamente al licenciado Báez Genoval. Apercibimos al querellado para que en el futuro ejerza mayor prudencia y rigurosidad al evaluar las situaciones que podrían generar intereses encontrados o crear una apariencia de impropiedad.

---

[19] In re De Léon Rodríguez, res. 11 de febrero de 2008, 173 D.P.R.___, 2008 T.S.P.R. 41.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

                              CP-2006-24

    Arnaldo Báez Genoval

SALA ESPECIAL INTEGRADA POR EL JUEZ PRESIDENTE SEÑOR HERNANDEZ DENTON, EL JUEZ ASOCIADO SEÑOR RIVERA PEREZ Y LA JUEZA ASOCIADA SEÑORA FIOL MATTA.

SENTENCIA

San Juan, Puerto Rico, a 12 de noviembre de 2008.

Por los fundamentos antes expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integra de la presente, censuramos severamente al licenciado Báez Genoval. Apercibimos al querellado para que en el futuro ejerza mayor prudencia y rigurosidad al evaluar las situaciones que podrían generar intereses encontrados o crear una apariencia de impropiedad.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina.

                    Dimarie Alicea Lozada
            Secretaria del Tribunal Supremo, Interina