*In re* JULIO IRVING RODRÍGUEZ TORRES.

*Número:* MC-76-4     *Resuelto:* 9 de abril de 1976

Informe presentado al Tribunal Supremo por *Miriam Naveira de Rodón, Procuradora General, Mario L. Paniagua, Eliadís Orsini Zayas* y *Maggie Correa Avilés, Procuradores Generales Auxiliares; Canales & Ferrer,* abogados del querellado.

PER CURIAM: Con vista del Informe presentado por la Procuradora General de Puerto Rico sobre la conducta profesional del abogado Julio Irving Rodríguez Torres, emitimos orden para que compareciera a mostrar causa por la cual no deberíamos adoptar medidas disciplinarias en su contra. En 23 de marzo de 1976 dicho abogado formuló su contestación, en la que expone sus argumentos y nos solicita rechacemos el Informe por carecer de fundamentos sus conclusiones, suplicando el archivo de las quejas.(1) Consideramos sometido el caso.

_____

(1) Mediante Resolución anterior archivamos el asunto referente a su participación en los casos criminales relacionados con el incendio ocurrido en la Delta International Corporation.

En síntesis, el referido Informe imputa al Lcdo. Rodríguez Torres lo siguiente:

1. Falta de "suficiente prudencia" al defender al Sr. Juan Tellería García en un caso criminal y representarlo como demandado en una reclamación por daños durante un período en que el perjudicado en la referida causa criminal y demandante en el caso civil, Sr. Carlos Justiniano Bayron, era también su cliente en un caso criminal pendiente de trámite apelativo; falta de diligencia en el recurso apelativo de este último.

2. Ausencia de diligencia en el perfeccionamiento de la apelación criminal interpuesta en los casos criminales contra Julio Dávila Feliciano (M-74-1079 y G-74-865 por Homicidio Voluntario e infracciones a los Arts. 6 y 8 de la Ley de Armas).

3. Conducta impropia al intervenir indebidamente con el testigo de cargo, Lcdo. Rafael Vicente Capó Zayas tratando de inducirlo a que alterara o retirara su testimonio en una causa criminal seguida contra el Sr. Dionisio Trigo.

Examinado minuciosamente el Informe, la abundante evidencia documental consistente de un sinnúmero de documentos judiciales, dos transcripciones, las declaraciones juradas de los quejosos, los testigos y del propio abogado Rodríguez Torres, consideramos probados los siguientes hechos:

I—Queja del Sr. Carlos A. Justiniano Bayrón:—

El Sr. Carlos A. Justiniano Bayron fue denunciado por el policía Gilberto Hernández el 10 de marzo de 1973 por infracción a la Sec. 5-801 de la Ley de Tránsito por alegadamente manejar un vehículo de motor en estado de embriaguez. En 14 de marzo, el Juez de Paz Hon. Miguel A. Talavera determinó existencia de causa probable fijándole una fianza de $500.00 para permanecer en libertad provisional; subsiguientemente, se radicó acusación en su contra en el Tribunal Superior, Sala de Mayagüez (Caso M-73-243). El Lcdo. Rodríguez Torres proveyó al Sr. Feliciano Bayron asistencia legal durante la

etapa de determinación de causa probable, logrando que se dejara sin fianza por tratarse de un delito menos grave. Posteriormente, el 31 de mayo de 1973, fue llamado dicho caso en el Tribunal Superior, Sala de Mayagüez, sesión de la mañana y el Lcdo. Rodríguez Torres solicitó que la vista fuera transferida para horas de la tarde. Debido a que dicho abogado tuvo que partir para Estados Unidos, el Lcdo. Juan E. Loyola López—abogado de Asistencia Legal—fue encomendado por el Lcdo. Rodríguez Torres para que representara al acusado en la vista. Ventilado el caso y convicto el acusado, el Lcdo. Loyola López presentó y suscribió documento denominado Escrito de Apelación, en el cual figuraba en maquinilla, como abogado del apelante, el nombre del Lcdo. Rodríguez Torres. La apelación fue desestimada por abandono por este Tribunal el 15 de febrero de 1974 a solicitud de la Oficina del Procurador, la cual comunicó dicha solicitud al Lcdo. Rodríguez Torres. Este no realizó ninguna gestión en dicho caso alegando no era abogado del mismo.

El 15 de noviembre de 1973 ocurrió un incidente en el cual el Sr. Carlos A. Justiniano Bayron resultó herido de bala y como consecuencia fue acusado criminalmente el Sr. Juan Tellería García, quien el 29 de noviembre de 1973 fue demandado en daños por el perjudicado y su esposa la Sra. Marinela Rodríguez de Justiniano.

El Lcdo. Rodríguez Torres representó en la etapa inicial al Sr. Tellería García en ambos casos, habiéndose pactado la suma de $1,000.00 en honorarios, de los cuales cobró únicamente $100.00. Oportunamente renunció a dicha representación.

II—Queja del Sr. Julio Dávila Feliciano:—

Desde julio de 1974 el Lcdo. Julio I. Rodríguez Torres representó como abogado defensor al Sr. Julio Dávila Feliciano en los casos criminales números M-74-1079 y G-74-865, Homicidio Voluntario e Infracción al Art. 6 y al Art. 8 de la

Ley de Armas respectivamente. La denuncia original por el delito de Asesinato en Primer Grado, en la vista preliminar, fue reducida a Homicidio Voluntario.

Celebrado el juicio y dictada sentencia condenatoria, el Sr. Dávila Feliciano encomendó al Lcdo. Rodríguez Torres la representación de la apelación ante el Tribunal Supremo de Puerto Rico. A tal efecto, dicho abogado radicó Escrito de Apelación el 23 de abril de 1975, Moción de Fijación de Fianza en Apelación el 5 de mayo de 1975 y en junio de 1975 Moción de Reconsideración de Sentencia a los fines de que se redujera la pena; esta última fue denegada por falta de jurisdicción.

El 6 de agosto de 1975, el Sr. Dávila Feliciano, bajo la impresión de que el Lcdo. Rodríguez Torres no había hecho gestiones con referencia a su apelación le pidió la renuncia, comunicándose con el Lcdo. Alfonso Gómez para que éste interviniera en la misma. A tal efecto, el Lcdo. Rodríguez Torres radicó moción sobre renuncia de representación profesional el 10 de noviembre de 1975 comunicándolo al Sr. Dávila Feliciano, la cual fue declarada sin lugar por la División de Apelaciones del Tribunal Superior.

La Procuradora General radicó Moción de Desestimación a esta apelación el 28 de agosto de 1975, ya que al cabo de cuatro (4) meses de haberse interpuesto, no se había gestionado la transcripción de evidencia. Inmediatamente el Lcdo. Rodríguez Torres solicitó dicho remedio, el cual fue declarado con lugar, pero luego dejado sin efecto por no haberse cumplido con la Regla 15 de nuestro Reglamento. El Lcdo. Julio I. Rodríguez Torres radicó Moción Informativa al respecto oponiéndose a la desestimación, alegando como fundamento para la demora habida, sus ocupaciones en sus labores como legislador. La División de Apelaciones, aun cuando se negó a desestimar la apelación, se pronunció en el sentido de que el exceso de trabajo no justifica el abandono de un caso según lo estipulado en el Canon 18 del Código de Ética Profesional.

Posteriormente, el 14 de enero de 1976, el Sr. Julio Dávila Feliciano radicó por derecho propio una Petición desistiendo de la apelación interpuesta y alegando que el Lcdo. Julio I. Rodríguez había abandonado el caso en apelación.

El Lcdo. Rodríguez Torres cobró tres mil dólares ($3,000) en este caso que fueron satisfechos en distintos plazos.

III—Queja del Lcdo. Rafael Vicente Capó Zayas:—

Con motivo de un incidente ocurrido en un club de San Juan, el 27 de abril de 1975 se formularon denuncias y se determinó la existencia de causa probable contra el Sr. Dionisio Trigo por cuatro cargos criminales consistentes de tres violaciones a la Ley de Armas (Arts. 6, 8 y 32, 25 L.P.R.A. secs. 416, 418 y 442 respectivamente) y una violación al Art. 94 del Código Penal vigente.

La vista preliminar en el caso por violación al Art. 8 de la Ley de Armas ante la Hon. Blanca Iris Bonilla, Juez de Distrito, comenzó el 14 de mayo de 1975, compareciendo el acusado representado por los licenciados David Carrión y Roberto B. Súarez, actuando como fiscal el Lcdo. Domingo Carrasquillo Díaz. El Lcdo. Rafael Vicente Capó Zayas, como perjudicado y como único testigo de los hechos prestó testimonio directo. Señalada la continuación para el día 29 de mayo de 1975, compareció el acusado representado por abogados distintos, los licenciados José E. de la Cruz, Santos P. Amadeo y José Enrique Amadeo, por cuya razón y en vista de que los abogados que originalmente habían comparecido, licenciados Carrión y Súarez, no habían renunciado ni expresado consentimiento de que se permitiera unir a otros abogados, el caso fue suspendido para el día 11 de junio de 1975. Ya para esta fecha, los abogados Carrión y Súarez habían renunciado al caso y se había acreditado la representación de los mismos abogados. En esta fecha comparece entonces también como abogado del acusado, el Lcdo. Rodríguez Torres quien antes de comenzar la continuación de la vista se dirigió y habló extensamente con el tes-

tigo de cargo a quien iba a contrainterrogar, Lcdo. Capó Zayas, tratándolo de persuadir de que desistiera de los cargos. (²)

El Lcdo. Capó Zayas estimó que se sintió presionado e incómodo por los términos de la conversación habida cuenta de la insistencia del Lcdo. Rodríguez Torres y su condición de Senador y Presidente de la Comisión de Nombramientos del Senado.

El Lcdo. Rodríguez Torres formuló y llevó a cabo el contrainterrogatorio del Lcdo. Capó Zayas; la vista total prosiguió el 16 de junio de 1975, fecha en que se determinó que no existía causa probable por el delito imputado. El día 17 de septiembre de 1975, el Lcdo. Capó Zayas sometió una declaración jurada a la Oficina de la Procuradora General quejándose de las actuaciones del Lcdo. Rodríguez Torres.

—O—

Ante el trasfondo de hechos expuesto, concluimos que procede el archivo de la queja relacionada con la tramitación de los casos en apelación del Sr. Julio Dávila Feliciano, ya que la evidencia demuestra que el Lcdo. Rodríguez Torres, con excepción de la tardanza en solicitar la transcripción de evidencia, cumplió sus compromisos profesionales. La impresión en contrario del quejoso Dávila Feliciano no tiene fundamento.

██ Sin embargo, en torno a las quejas del Sr. Carlos Justiniano Bayrón, consideramos probado que el Lcdo. Rodrí-

---

(²) El Lcdo. Capó Zayas, entre otras cosas, declaró:

". . . el Senador Rodríguez estuvo insistiendo por razón de 45 minutos, específicamente. (Noté que cuando el Senador me abordó eran la 1:50 P.M. y al terminar de presionarme eran como las 2:35 P.M.) Entre las expresiones que utilizó hago mención específica de las siguientes: 'tú deberías pensar esto bien, porque te puedes perjudicar en tu futuro. Tú eres un muchacho joven con un gran futuro que no se debe afectar.' "

El Lcdo. Rodríguez Torres expresa que se extendió ". . . algunos 15 ó 20 minutos" y que la conversación giró sobre ". . . las virtudes del Sr. Trigo . . . con relación a la vista que iba a comenzar . . . que lamentaba ese incidente entre el compañero abogado, que hasta entonces no conocía . . . ."

guez Torres no desplegó oportunamente las diligencias de rigor pertinentes para acreditar durante el trámite apelativo y ante el acusado su determinación de que no era abogado en récord. Hay constancia en el expediente de que realizó gestiones en favor del acusado y pidió la transferencia de la vista, encomendando, por circunstancias del momento, su tramitación al Lcdo. Loyola López. Tales factores apuntan hacia la conclusión de que ostentaba la representación profesional del Sr. Justiniano Bayrón y denota una postulación descuidada y desorganizada. Su falta de comunicación y su posterior intervención representando al Sr. Tellería García en una época en que nominalmente todavía era abogado de Justiniano Bayrón, constituye una conducta profesional reprobable reñida con las normas consagradas en los Cánones 20 y 21 del Código de Ética Profesional vigente.

■ El ejercicio de la práctica de la profesión de abogado requiere en todo momento celo, cuidado y prudencia. En la consecución de estos logros deben adoptarse las medidas conducentes a dejar constancia—libre de ambigüedades y dudas y con la autorización de los tribunales correspondientes—de su verdadero status como defensor en las causas en que ha intervenido. La omisión del Lcdo. Rodríguez Torres de cumplir con esta norma básica motivó indirectamente que la apelación del Sr. Justiniano Bayrón fuera desestimada por abandono y de que figurara, en un período dado, como nuevo abogado de dos partes contrarias en unos casos, que aunque separados y no relacionados respecto a la naturaleza de las causas de acción envueltas, convergían hacia unas mismas partes. *In re González*, 92 D.P.R. 544 (1965); *In re Padilla*, 87 D.P.R. 236 (1963).

▪■ Igualmente constituye conducta que conlleva nuestra más enérgica censura su intervención con el testigo de cargo Lcdo. Capó Zayas en una causa criminal, habida cuenta que fue unido como abogado de la defensa para conducir el contra-

interrogatorio de dicho testigo, quien ya había prestado testimonio directo y que el delito imputado no era uno de los que se podía transigir. Regla 246 de Procedimiento Criminal.

Finalmente, no podemos sustraernos a la realidad de que el Lcdo. Rodríguez Torres, en su dualidad de abogado y Presidente del Comité de Nombramientos del Senado, ha intervenido en innumerables casos civiles y criminales ante los tribunales de primera instancia. Tampoco podemos perder de vista que subsiste la errónea creencia de que el abogado que ocupa una posición especial de poder en el proceso legislativo de pasar juicio sobre los nombramientos judiciales puede imponer sus criterios a los jueces.

Los documentos ante nuestra consideración no contienen hechos de los que podamos inferir libres de error, que el querellado utilizara e hiciera sentir su posición como Presidente de la Comisión de Nombramientos en la intocable función de emitir un fallo justo.

▆▆ No obstante, la justicia debe ser inmaculada no sólo en su realidad interior sino también en su apariencia externa. Dicho principio está encarnado en diferentes disposiciones del Código de Ética Profesional. La prohibición establecida en el Canon 11 ([8]) respecto a las influencias o presiones indebidas hacia jueces debe interpretarse a la luz de lo anterior como que prohíbe también cualquier actuación que diese lugar a una apariencia de indebidas influencias. En nuestro sistema de gobierno, "donde la voluntad del pueblo es la fuente del poder público [y] donde el orden público está subordinado a los derechos del hombre", la confianza del pueblo en su sistema de justicia es de vital importancia para el mantenimiento de la armonía social y esto le impone a cada abogado, en cada instante de su gestión profesional, la más cuidadosa auto-disci-

---

([8]) *In fine* dispone: "Sumo cuidado debe tener el abogado que ocupa un cargo público o político en abstenerse de tratar de ejercer influencia o presión indebida en la tramitación de cualquier asunto sometido a la consideración judicial."

plina de forma que evite siempre aun la más leve apariencia de actuaciones indebidas.

■ En virtud de nuestra facultad constitucional e inherente de reglamentar la profesión de abogado, y en el ejercicio de nuestra indelegable obligación de irle dando contenido concreto a los principios enunciados en el Código de Ética Profesional, resolvemos que existe una insalvable incompatibilidad en el ejercicio de la abogacía ante los tribunales de primera instancia—directamente o mediante asociados o delegados—y el pertenecer a una Comisión del Senado que tenga a su cargo la consideración de nombramientos de jueces o fiscales mientras dure la incumbencia del abogado-legislador en dicha comisión.

*Se dictará sentencia de conformidad con lo expresado en la anterior opinión, archivando la queja del señor Julio Dávila Feliciano contra el Lcdo. Julio Irving Rodríguez Torres y censurando a dicho abogado por su conducta relacionada con los casos del señor Carlos A. Justiniano Bayrón y su intervención con el Lcdo. Rafael Vicente Capó Zayas, apercibiéndosele de mantener en el futuro su conducta profesional dentro de los términos y límites del Código de Ética Profesional vigente y su interpretación por este Tribunal.*

El Juez Presidente, Señor Trías Monge, y el Juez Asociado, Señor Martín, no intervinieron.