per curiam:
Mediante Opinión y Orden de 12 de marzo de 2006, el Tribunal de Distrito Federal para el Distrito de Puerto Rico (Tribunal de Distrito Federal) decretó el desaforo del Ledo. Nelson Rochet Santoro del ejercicio de la abogacía ante dicho foro en el caso In the Matter of: Nelson Rochet Santoro, Misc. No. 03 — 016(JAF); Civil No. 96-2443(JAF). Posteriormente, el Tribunal Federal de Apelaciones para el Primer Circuito confirmó la referida determinación en el caso In the Matter of: Nelson Rochet-Santoro, No. 05 — 2855, 06-1690.
Según la información recibida con relación a lo ocurrido en la jurisdicción federal, el 14 de septiembre de 2007 emitimos una Resolución mediante la cual le concedimos un término a Rochet Santoro para que mostrara causa por la cual este Tribunal no debía imponer una sanción disciplinaria por los hechos que dieron lugar a su desaforo en el Tribunal de Distrito Federal. Dicha Resolución se le notificó a Rochet Santoro personalmente a través de la Oficina del Alguacil el 21 de septiembre del mismo año.
En respuesta, Rochet Santoro presentó una moción en la cual indicó que había solicitado reconsideración ante el Tribunal Federal de Apelaciones para el Primer Circuito, por lo que requirió un término adicional para contestar la orden de mostrar causa. Dicha solicitud fue declarada “con lugar” y, a tales efectos, le dimos hasta el 29 de octubre para cumplir con lo ordenado.
Posteriormente, la moción de reconsideración presentada por Rochet Santoro fue denegada por el Tribunal Federal de Apelaciones para el Primer Circuito. No obstante, Rochet Santoro presentó ante nos una “Moción para que se paralicen los procedimientos”, mediante la cual nos informó que había presentado ante el mencionado foro federal la Moción Clarificando la Reconsideración que fuera Denegada. En vista de que quedaban trámites apelativos pendientes, solicitó la paralización de los procedimientos. Hoy, Rochet Santoro no nos ha informado del resultado de esta última moción presentada. No obstante, la Secretaría *127 de este Tribunal se comunicó con el Tribunal Federal de Apelaciones para el Primer Circuito, quienes le informaron que la solicitud aludida también fue denegada el 13 de diciembre de 2007.
Enterado este Tribunal de dicha determinación, se le concedió a Rochet Santoro un término final para contestar la orden de mostrar causa emitida el 14 de septiembre de 2007. Rochet Santoro compareció fuera del término concedido y solicitó una nueva extensión del plazo para cumplir con la orden de mostrar causa. El pasado 11 de junio de 2008 denegamos dicha solicitud y dimos por sometido el asunto. Por lo tanto, procedemos a resolver sin trámite ulterior.
I
El mencionado trasfondo procesal tuvo su génesis en la litigación que produjo la “Explosión de Río Piedras” contra las compañías Enron Corp., San Juan Gas y otros demandados. Los casos que se produjeron tras ese incidente fueron consolidados y resueltos mediante un acuerdo global de indemnización a ser pagada a favor de los demandantes bajo la supervisión del juez federal, Hon. Robert J. Ward. Rochet Santoro estaba admitido a la práctica en el Tribunal y representaba a múltiples demandantes involucrados en ese litigio.
Mientras el Hon. Robert Ward supervisaba los desembolsos del dinero producto del acuerdo transaccional, desarrolló cierta preocupación con unas deducciones realizadas por Rochet Santoro de las cantidades correspondientes a sus clientes. En vista de ello, sugirió iniciar una investigación sobre el asunto, la cual —en efecto— fue ordenada por el Tribunal de Distrito Federal. Comenzada la investigación, varios ex clientes de Rochet Santoro enviaron cartas y mociones en las que expresaron diversas inquietudes con la conducta profesional de Rochet Santoro y con la calidad de los servicios legales ofrecidos.
*128 En esencia, las comunicaciones incluían alegaciones sobre insatisfacción con el manejo de los casos y con la comunicación entre abogado y cliente; alegaciones sobre amenazas para que los clientes firmaran los contratos de honorarios de abogado y alegaciones sobre desembolsos no autorizados de los fondos disponibles tras el acuerdo transaccional. Además, durante el desarrollo de la investigación se descubrió que Rochet Santoro había contratado al Sr. Enrique Cardona (quien no tenía licencia de abogado) y compartía con él los honorarios recibidos en el caso relacionado con la Explosión de Río Piedras.
Por estos hechos, y tras la correspondiente investigación, la entonces magistrado federal Aida Delgado Colón rindió un Informe ante el Tribunal de Distrito Federal en el cual imputó a Rochet Santoro la violación de las Reglas 1.1, 1.3, 1.4, 1.5, 1.6, 1.8(f), 3.2, 5.4(a)(b)(c), 5.4(d)l, 8.2(a) y 8.4(a)(c)(d) de la Reglas Modelo de Conducta Profesional de la American Bar Association. Después de conceder un término a Rochet Santoro para reaccionar al referido Informe, se celebró la correspondiente vista disciplinaria, a la cual Rochet Santoro no asistió sin proveer justificación alguna.
Posteriormente, los jueces del Tribunal de Distrito Federal se reunieron para discutir el asunto según los hallazgos de la Magistrado y de las objeciones escritas alegadas por Rochet Santoro, muchas de las cuales se relacionaban con alegadas violaciones al debido proceso de ley durante el proceso investigativo. Tras el correspondiente análisis, los jueces del Tribunal de Distrito Federal determinaron que el proceso seguido contra Rochet Santoro cumplió con las exigencias que el debido proceso de ley garantiza en estas instancias y concluyeron que, dada la gravedad de la conducta, procedía su desaforo de la práctica de la abogacía ante dicho foro. El Tribunal Federal de Apelaciones para el Primer Circuito sostuvo la determinación.
*129 II
De entrada, debemos tener presente que el deber de conducirse de un modo decoroso, íntegro y compatible con los postulados de los cánones de ética profesional aplica a todos los abogados admitidos en nuestra jurisdicción, independientemente del foro ante el cual postulen. In re Córdova González, 135 D.P.R. 260, 267 (1994). Ello en vista de que la naturaleza de la profesión de abogado les impide actuar al margen de la conducta esperada una vez son admitidos al ejercicio de la profesión en nuestro país. Por lo tanto, “[e]l mero hecho de ejercer la profesión ante el foro federal o un foro administrativo no excluye al abogado admitido en nuestra jurisdicción del ámbito de aplicación del Código de Ética Profesional ...”. (Énfasis en el original.) íd.
Conforme con lo anterior, cuando un abogado admitido al ejercicio de la profesión en Puerto Rico es sancionado disciplinariamente por otro foro judicial, es imperativo evaluar su conducta para determinar si procede la imposición de una sanción disciplinaria en nuestra jurisdicción.
III
Según surge de la Opinión y Orden del Tribunal de Distrito Federal, Rochet Santoro incurrió en una conducta impropia y deshonesta que afectó los intereses de sus clientes. En particular, dicho foro encontró probado que Rochet Santoro compartía honorarios con el señor Cardona a cambio de que éste financiara el litigio. A su vez, Rochet Santoro le daba al señor Cardona información privilegiada de los clientes y le permitía participar de los asuntos relacionados con el caso. Igualmente, se estableció que Rochet Santoro autorizaba al señor Cardona a formar parte de las reuniones con los clientes y hasta custodiar los expedientes del caso. Asimismo, se probó que Rochet Santoro nunca informó a sus *130 clientes del contrato que existía entre él y el señor Cardona. Además, quedó probado que Rochet Santoro no representó a sus clientes con competencia y diligencia, al punto de que muchos llegaron a considerar que abandonó el caso.
De igual manera, se estableció que Rochet Santoro hizo desembolsos no autorizados de los fondos correspondientes a sus clientes como parte del acuerdo transaccional. A su vez, quedó probado que Rochet Santoro trató de incluir gastos administrativos como parte de los honorarios contingentes y que incluyó en las facturas gastos en los que no incurrió. Igualmente, se logró establecer que Rochet Santoro les decía a sus clientes que el Hon. Robert Ward era un racista, que fue enviado al Tribunal de Distrito Federal a “cortarle la cabeza a los hispanos” y que dicho juez desestimaría la demanda. Todas estas imputaciones tenían el propósito de conseguir que firmaran el acuerdo transaccional y el contrato de honorarios de abogado. De esa forma, se estableció que Rochet Santoro amenazaba a los clientes para que firmaran los contratos y les aseguraba un resultado determinado en el desenlace del caso. Finalmente, se probó que Rochet Santoro alteró documentos e incurrió en conducta deshonesta hacia sus clientes para beneficio personal.
Evidentemente, Rochet Santoro no sólo actuó en contravención de las Reglas Modelos de la American Bar Association —utilizadas como marco de referencia por el Tribunal de Distrito Federal— sino también en contravención de los cánones de ética profesional imperantes en nuestra jurisdicción.
Por un lado, no cabe duda de que Rochet Santoro violó el Canon 9 del Código de Etica Profesional, el cual dispone que los abogados deben observar hacia los tribunales una conducta que se caracterice por el mayor respeto. 4 L.P.R.A. Ap. IX. Dicho canon establece que el deber de respeto antes mencionado también incluye la obligación de desalentar y evitar ataques injustificados o atentados ilíci *131 tos contra los jueces o los tribunales. íd. Véase, además, In re Córdova González, supra, pág. 274. Ya anteriormente hemos expresado que “ ‘[e]l abogado no tiene licencia absoluta en el uso del lenguaje para poner en entredicho o mancillar la dignidad de los jueces’ ”. In re López de Victoria I, 163 D.P.R. 1, 8 (2004). Igualmente, hemos afirmado que resulta nefasto para la buena práctica de la profesión que un abogado haga serias imputaciones sobre el obrar de un juez cuando las mismas no están avaladas por evidencia contundente e indubitada. Id. Véase In re Crespo Enríquez, 147 D.P.R. 656 (1999).
A pesar de la claridad de dicho postulado ético, Rochet Santoro realizó ataques serios e infundados contra el Hon. Robert Ward al indicarle a sus clientes que éste era un juez racista cuya misión en el Tribunal de Distrito Federal era perjudicar a los hispanos. De hecho, Rochet Santoro les infundió la idea de que dicho juez les desestimaría la demanda, precisamente, por razones discriminatorias. Rochet Santoro incurrió en dicha conducta con el único fin de que éstos firmaran el acuerdo transaccional y el contrato de honorarios de abogado.
De esa forma, Rochet Santoro no sólo socavó la confianza de sus clientes en el sistema de justicia federal, sino que mancilló injustificada e infundadamente la reputación de un miembro de la Judicatura federal. Siendo así, no cabe duda que éste no cumplió con el deber de observar el mayor de los respetos hacia los tribunales ni con la obligación de propiciar que otros también lo observen, todo ello en violación del Canon 9 del Código de Etica Profesional, supra.
De otro lado, opinamos que Rochet Santoro también se apartó de las exigencias éticas del Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. El referido canon versa sobre el deber de competencia y diligencia del abogado en la tramitación de las causas que se le encomiendan. En particular, dicho canon dispone que “ [e] s *132 deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable”, íd. Véase, además, In re Pujol Thompson, 171 D.P.R. 683 (2007).
Evidentemente, la pauta que establece el Canon 18, supra, abarca una expectativa básica y razonable de lo que se espera de todo miembro del foro. Como funcionarios del tribunal, los abogados tienen que desplegar su mayor esfuerzo en la tramitación de los asuntos encomendados y nunca deben apartarse de los estándares requeridos de diligencia, celo y competencia. Véanse: In re Marrero Figarella, 146 D.P.R. 541 (1998); In re Rodríguez Torres, 104 D.P.R. 758 (1976).
Sin embargo, la conducta de Rochet Santoro para con sus clientes no se caracterizó por la mayor diligencia y competencia posible. Por el contrario, de la Opinión y Or-den del Tribunal de Distrito Federal se deduce que éste no respondía a las llamadas de sus clientes y no les asistía adecuadamente en el proceso de descubrimiento de prueba. De hecho, como mencionamos antes, a menudo sus clientes se sintieron abandonados en el transcurso del litigio para el cual lo habían contratado. Por lo tanto, no cabe duda de que Rochet Santoro incumplió con la exigencia básica de emplear en los trámites encomendados la mayor diligencia, omitiendo proveerles a sus clientes la mejor representación posible.
De igual manera, debemos reconocer que Rochet Santoro actuó de espaldas al deber de información que preceptúa el Canon 19 del Código de Etica Profesional, 4 L.P.R.A. Ap. IX. La referida norma ética postula que el abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso. Véase, además, In re Alonso Santiago, 165 D.P.R. 555 (2005). Al interpretar dicho precepto, hemos expresado que *133 un abogado debe mantener a su cliente informado de las gestiones realizadas y del desarrollo de los asuntos a su cargo, consultándole cualquier duda sobre aquello que no caiga en el ámbito discrecional. Véase In re Acosta Grubb, 119 D.P.R. 595 (1987). Evidentemente, estas exigencias son un elemento imprescindible en la relación fiduciaria que existe entre abogado y cliente. Véase In re García Muñoz, 170 D.P.R. 780 (2007).
No obstante, Rochet Santoro omitió informarles a sus clientes del acuerdo que tenía con el señor Cardona para que éste financiaría el litigio a cambio de la mitad de los honorarios de abogado. Además, Rochet Santoro dejó de advertirles sobre las funciones que estaba poniendo en ma-nos de esta persona sin licencia de abogado y dejó de informarles sobre el manejo que el señor Cardona tenía de los expedientes del caso. De esa forma, Rochet Santoro les ocultó a sus clientes información importante relacionada con sus casos y, por ende, incumplió el deber de información establecido en el mencionado Canon 19.
A su vez, Rochet Santoro actuó en contravención de los principios recogidos en el Canon 33, el cual requiere que todo abogado evite que personas no autorizadas practiquen la abogacía o la notaría. 4 L.P.R.A. Ap. IX. Véase, además, In re Gervitz Carbonell, 162 D.P.R. 665 (2004). Igualmente, dicho canon dispone que no es propio de un abogado permitir o facilitar que una persona no autorizada a ejercer la abogacía o la notaría cobre total o parcialmente por los servicios profesionales prestados por el abogado. Canon 33 del Código de Etica Profesional, supra. De forma similar, el canon aludido prohíbe que un abogado permita que personas no autorizadas suministren consejo legal y que el abogado se una en sociedad con personas no autorizadas a ejercer la abogacía cuando cualquiera de las actividades de la sociedad involucre la abogacía o la notaría. Id. Al interpretar la referida disposición, hemos expresado que “[n]o sólo incurre en conducta violatoria del Canon 33 *134 ... aquel abogado que permita que una persona ejerza ilegalmente la abogacía, sino que claramente viola dicho canon aquel jurista que comparte sus honorarios con una persona que no es abogado”. (Énfasis en el original.) In re Franco Rivera, 169 D.P.R. 237, 271 (2006).
A pesar de lo anterior, Rochet Santoro llegó a un acuerdo con el señor Cardona —persona no admitida al ejercicio de la abogacía— conforme al cual este último financiaría el litigio relacionado a la Explosión de Río Piedras a cambio de la mitad de los honorarios que se recibieran por los servicios legales de Rochet Santoro. Además de que —bajo ese esquema— Rochet Santoro compartía indebidamente honorarios de abogado con el señor Cardona, también permitía que este último interviniera en el manejo del caso, en las reuniones con los clientes y hasta que custodiara los expedientes. De hecho, según la Opinión y Orden del Tribunal de Distrito Federal, Rochet Santoro permitió que el señor Cardona tomara parte activa en la toma de decisiones relacionadas al caso para el que fue contratado. Por lo tanto, resulta innegable que Rochet Santoro autorizó a una persona no admitida al ejercicio de la abogacía a formar parte de la representación legal de sus clientes y, en consecuencia, no se ajustó a la norma ética recogida en el Canon 33, supra.
Incluso, no cabe duda de que la conducta antes mencionada supone, además, una transgresión del Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, el cual dispone —entre otras cosas— que “[l]a obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias, y la de adoptar medidas adecuadas para evitar su divulgación”. (Énfasis nuestro.) Véanse, además: In re Bauzá Torres, 171 D.P.R. 894 (2007); In re Bonilla Rodríguez, 154 D.P.R. 684 (2001). Dicha norma ética pretende evitar una conducta profesional que mine el principio cardinal de confianza que fundamenta *135 toda relación entre abogado y cliente. In re Bauzá Torres, supra.
No obstante, Rochet Santoro no honró el deber de lealtad y confidencialidad que todo abogado tiene para con su cliente. Este, en lugar de salvaguardar las confidencias de sus clientes, introdujo en la relación abogado-cliente a una tercera persona que tuvo una participación activa en el manejo del caso y que recibió parte de los honorarios pactados, todo ello sin el consentimiento de éstos. Dicha tercera persona tuvo acceso a información privilegiada y a detalles de los casos sobre los cuales Rochet Santoro ostentaba la representación legal. De hecho, como hemos mencionado antes, Rochet Santoro llevaba a ese tercero a las reuniones con los clientes y puso en sus manos —sin la debida autorización— los expedientes de éstos. Por lo tanto, debemos concluir que Rochet Santoro no actuó en conformidad con el deber de fiducia y lealtad que supone la relación abogado-cliente.
También relacionado con el citado Canon 21, Rochet Santoro incurrió en una conducta que representa una grave falta al deber de lealtad hacia el cliente, y al deber de sinceridad y honradez que establece el Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Nos referimos al hecho probado ante el Tribunal de Distrito Federal de que Rochet Santoro realizó deducciones no autorizadas de los fondos correspondientes a sus clientes en concepto de indemnización como producto del acuerdo transaccional. Indudablemente, dicha conducta supone una seria afrenta contra la naturaleza fiduciaria que caracteriza la relación abogado-cliente y representa una desviación grave del estándar de sinceridad y honradez que exige la comunidad jurídica. Esta conducta tiene el potencial de menoscabar la confianza de los ciudadanos en la profesión legal y de socavar los cimientos del sistema de justicia. En vista de ello, opinamos que amerita una severa sanción de parte de este Tribunal.
*136 Ahora bien, además de lo anterior, Rochet Santoro incurrió en otras prácticas que atentan contra las normas que rigen lo relacionado a los honorarios de abogado. Según señalamos antes, éste forzó a sus clientes a firmar los contratos de honorarios de abogado empleando medidas de amedrentamiento y de amenazas. Igualmente, con el fin de asegurar sus honorarios, Rochet Santoro le hizo creer a sus clientes que les desestimarían la demanda si no lo contrataban y, con idéntico fin, les prometió resultados particulares en el desenlace del caso. Igualmente, quedó probado que éste facturó por gastos en los cuales no incurrió e incluyó indebidamente en los honorarios contingentes ciertos gastos administrativos.
Claramente, dicha conducta infringe el Canon 24, en cuanto éste dispone que “[l]a fijación de honorarios profesionales debe regirse siempre por el principio de que nuestra profesión es una parte integrante de la administración de la justicia y no un mero negocio con fines de lucró”. (Énfasis nuestro.) 4 L.RR.A. Ap. IX. Véanse, además: In re Rivera Rivera, 171 D.P.R. 942 (2007); In re Díaz Lamoutte, 106 D.P.R. 450 (1977). En la medida en que Rochet Santoro utilizó mecanismos incompatibles con la verdad y la honestidad para asegurar sus honorarios de abogado, actuó bajo el entendido de que el ejercicio de la profesión es un simple negocio lucrativo. De esa forma, no le hizo honor a la norma que postula que los contratos de servicios profesionales se encuentran inmersos en normas deontológicas que dotan a la relación abogado-cliente de un interés público superior que puede trascender el interés exclusivo de las partes. Nassar Rizek v. Hernández, 123 D.P.R. 360 (1989).
La conducta antes mencionada constituye también una violación al Canon 35, supra, el cual requiere que los abogados actúen con sinceridad y honradez en las relaciones con sus representados. De hecho, al examinar los contornos de este Canon, hemos expresado claramente que “[n]o es *137 sincero ni honrado utilizar medios que sean incompatibles con la verdad ..In re Marini Román, 165 D.P.R. 801, 807 (2005). Dado que Rochet Santoro sembró expectativas que no necesariamente se ajustan a la realidad, y ya que les transmitió a sus clientes información tergiversada sobre los funcionarios del tribunal con el único propósito de satisfacer sus intereses personales, resulta innegable que éste no se condujo hacia sus clientes de forma sincera y honrada.
Evidentemente, tampoco fue sincero ni honrado de parte de Rochet Santoro alterar documentos durante el trámite del litigio. El mencionado Canon 35, supra, contempla este asunto de forma particular y, al respecto, establece que “[e]l abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar affidávit u otros documentos, y al presentar causas”. (Énfasis nuestro.) Indudablemente, dicha conducta refleja unas deficiencias en el estado ético de Rochet Santoro que, hasta en las cosas más pequeñas, parecen impedirle obrar con honradez. Debemos recordar que, más que un ideal irrealizable, la verdad es atributo inseparable del ser abogado, y sin ésta la profesión jurídica no podría justificar su existencia. In re Davison Lampón, 159 D.P.R. 448 (2003).
Por último, examinada la conducta de Rochet Santoro en su totalidad, opinamos que éste no cumplió con la obligación de todo abogado de exaltar el honor y la dignidad de la profesión. Nótese que el Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, establece que “[e]l abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales Al interpretar este canon hemos sostenido que “ ‘[c] ada abogado es un espejo en que se refleja la imagen de la profesión ... que [se] debe representar con limpieza, lealtad, y el más escrupuloso sentido de responsabilidad’ ”. In re Ortiz Brunet, *138 152 D.P.R. 542, 556 (2000). Véase In re Quiñones Ayala, 165 D.P.R. 138 (2005).
Según estos principios, consideramos que Rochet Santoro no se esforzó, al máximo de su capacidad, en exaltar el honor y la dignidad de la profesión. Su conducta estuvo impregnada de una impropiedad tan severa que produjo la impresión de haber estado utilizando la profesión primordialmente con ánimo de lucro. Ciertamente, la conducta de Rochet Santoro no puso de manifiesto los principios que subyacen la profesión legal, sino que su conducta se distinguió por sacar provecho de su posición y emplear medidas y actuaciones incompatibles con la verdad y la honradez. Sus actuaciones constituyen un atentado, no sólo contra la lealtad que les debía a sus clientes, sino contra el sistema judicial mismo en cuanto atacó infundadamente la reputación de un magistrado.
Conforme a lo anterior, concluimos que la conducta de Rochet Santoro que conllevó su desaforo en el Tribunal de Distrito Federal para el Distrito de Puerto Rico constituye, a su vez, una conducta que viola los Cánones 9, 18, 19, 21, 24, 33, 35 y 38 del Código de Ética Profesional en nuestra jurisdicción. Por ello, se decreta su suspensión indefinida del ejercicio de la abogacía.

Se dictará sentencia de conformidad.