*939 TEXTO COMPLETO DE LA SENTENCIA
I
Carlos Rubén López Nieves, representado por la Sociedad Para Asistencia Legal (en adelante, el “señor López Nieves”), solicita la expedición de un auto de certiorari y revoquemos una Resolución emitida por el Tribunal de Primera Instancia, Sala de Aguadilla, Hon. Anselma M. Cabrera Marte, Juez, el 15 de diciembre de 2008, notificada en igual fecha, en el caso El Pueblo de Puerto Rico v. Carlos R. López Nieves, Crim. Núm. A1VP2008-02361, por asesinato en primer grado. Mediante el dictamen, instancia determinó que no existía conflicto de interés que impidiera a la Sociedad Para Asistencia Legal (SAL) representar al señor López Nieves, y a otro imputado de un delito distinto, hijo de la occisa, a quien se alega en el presente caso que le dio muerte el señor López Nieves. En unión a su recurso, la SAL solicitó la paralización de los procedimientos de vista preliminar pautados para el 18 de diciembre de 2008.
Atendida la solicitud el 17 de diciembre de 2008, ordenamos la paralización de los procedimientos hasta que otro curso de acción dispusiéramos. Por otro lado, concedimos al Procurador General (Procurador) término improrrogable de diez (10) días para expresar su posición sobre los méritos del recurso. Por último, ordenamos a la SAL acreditar su cumplimiento para con las disposiciones de la Regla 79 (E) de nuestro Reglamento, quien el 18 de diciembre de 2008, cumplió con lo ordenado.
Por su parte, el 30 de diciembre de 2008, el Procurador presentó Escrito en Cumplimiento de Orden, el que presentó con un número de presentación distinto (KLCE-2008-00878), retrasándose su presentación en la Secretaría.
Resolvemos con el beneficio de las comparecencias, el derecho y la jurisprudencia aplicable, no sin antes exponer lo acontecido en instancia.
*940 II
El 25 de noviembre de 2008, el Pueblo de Puerto Rico presentó una denuncia contra el señor López Nieves por el delito de asesinato en primer grado, imputándole haber estrangulado con una soga, a la señora Maritza Nieves Cruz, hechos ocurridos el 23 de noviembre de 2008, en el Municipio de Aguadilla. Ese mismo día, se determinó causa probable para arresto, fijándosele una fianza de $500,000 y ordenándose su arresto.
Conforme a las disposiciones de la Regla 22(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 22(c), el 12 de diciembre de 2008, el señor López Nieves fue llevado a la Unidad de Confinados del Centro Judicial de Aguadilla, a los fines de ser entrevistado por un abogado de la SAL, y determinar si cualificaba para ser representado libre de costo. En esa ocasión, en horas de la tarde, el señor López Nieves fue entrevistado por el licenciado Víctor Martínez Ramírez quien advino, posteriormente, en conocimiento de que el señor Alex Hernández Nieves de 18 años de edad, hijo de la occisa, la señora Nieves Cruz, por cuya muerte está denunciado en este caso, el señor López Nieves, era cliente de la SAL, Oficina de Aguadilla. Al enterarse de ello, el licenciado Martínez Ramírez regresó a la Unidad de Confinados para informarle al señor López Nieves del conflicto, pero ya se lo habían llevado del Centro Judicial.
A la vista preliminar señalada para el 15 de diciembre de 2008, compareció el señor López Nieves, representado por los licenciados Martínez Ramírez y Edwin Barreto Barreto, de la SAL, Oficina de Aguadilla, y el Pueblo de Puerto Rico representado por la Fiscal Belinda Brignoni. En esa ocasión, la representación de la SAL le informó al tribunal lo ocurrido en la entrevista del 12 de diciembre de 2008, y que no obstante a que el señor López Nieves cualificaba para ser representado por la SAL, con anterioridad ellos habían asumido la representación del señor Hernández Nieves, hijo de la señora Nieves Cruz occisa en el caso, y por tal razón entendían que existía un conflicto de interés que impedía a la Oficina de la SAL de Aguadilla asumir la representación. En consideración a lo cual, la SAL solicitó se le eximiera de representar al señor López Nieves, argumentando que aún cuando la jurisprudencia señala que no es necesario revelar la naturaleza del conflicto, por deferencia, se brindaba al tribunal la información relativa al nombre del hijo de la occisa, cliente de la SAL, además, la fecha del próximo señalamiento en su caso. En esa ocasión, la magistrada entrevistó al señor López Nieves, sobre el alegado conflicto, quien indicó que no tenía reparos en cuanto a que la SAL continuara con su representación legal.
Posteriormente, el tribunal, citando jurisprudencia estatal y federal, emitió su Resolución, determinando que no existía conflicto de interés que impidiera a la SAL representar al señor López Nieves. Expresó, en lo pertinente, lo siguiente:

“El Tribunal Supremo dispuso en In re: Belén Trujillo, 126 D.P.R. 743, 754 (1990) que el conflicto de intereses proscrito por el Canon 21 comprende tanto el conflicto de intereses personales como el conflicto de obligaciones. La primera vertiente sostiene que el conflicto existe cuando los intereses personales del abogado interfieren con la representación adecuada y efectiva del cliente al ser éstos incompatibles entre sí, dificultando así, el deber de lealtad hacia su cliente. En su segunda acepción, el conflicto de obligaciones cuando las representaciones simultáneas o sucesivas están en conflicto con su deber de guardar confidencias que ostenta el abogado con los intereses de cada uno de sus clientes. ”

Adujo, además, que en la jurisdicción federal se “ha reconocido que existe un conflicto de intereses si un abogado presenta prueba o argumentos que podrían significativamente beneficiar a un acusado y al mismo tiempo perjudicar a otro que dicho abogado representa. ” Basado en ello, instancia emitió su Resolución el 15 de septiembre, notificándose ese mismo día, determinando que no existía un conflicto de intereses que impidieran a la SAL representar al señor López Nieves.
Inconforme con la determinación, el 16 de diciembre de 2008, el señor López Nieves recurre, imputándole a instancia haber errado al denegar su solicitud de relevo de representación, no obstante existir un claro e *941 insalvable conflicto de intereses que impedían al representante de la SAL, ofrecerle una adecuada y eficaz representación legal.
III
En todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma, a carearse con los testigos de cargo, a obtener la comparecencia compulsoria de testigos a su favor, a tener asistencia de abogado, y a gozar de la presunción de inocencia. (Énfasis nuestro). Artículo II Sección 11, Constitución del Estado Libre Asociado de Puerto Rico. 1 L.P.R.A. § 11. Ese precepto fundamental de nuestro ordenamiento constitucional, naturalmente implica una representación legal adecuada y efectiva, libre de conflictos e intereses encontrados. Pueblo v. Padilla Flores, 127 D.P.R. 698, 701 (1991).
El ejercicio de la práctica de la profesión de la abogacía requiere en todo momento celo, cuidado y prudencia. En la consecución de estos logros deben adoptarse las medidas conducentes a dejar constancia, libre de ambigüedades y dudas y con la autorización de los tribunales correspondientes, de su verdadero status como defensor en las causas en que ha intervenido. In re: Rodríguez Torres, 104 D.P.R. 758, 765 (1976).
El Canon 21 del Código de Ética Profesional de 1970, según enmendado, 4 L.P.R.A. Ap. IX, C. 21, el que transcribimos a continuación, regula la representación de intereses encontrados por los miembros de la profesión legal.
Canon 21. Intereses encontrados.
El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.
No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.
La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.
Un abogado que representa a una corporación o sociedad le debe completa lealtad a la persona jurídica y no a sus socios, directores, empleados o accionistas y solamente puede representar los intereses de dichas personas cuando los mismos no vengan en conflicto con los de la corporación o sociedad.
Cuando un abogado representa a un cliente por encomienda de otra persona o grupo, quien le paga al abogado por dicho servicio, debe renunciar la representación de ambos tan pronto surja una situación de conflicto de intereses entre la persona o grupo que le paga sus honorarios y la persona a quien representa. (Énfasis nuestro)
El principio medular del referido Canon es instrumentar el deber de lealtad completa del abogado a su cliente. Este deber le impone al. abogado dos obligaciones principales: (1) la obligación de ejercer un criterio *942 profesional independiente en defensa de los intereses de su cliente; y (2) la obligación de no divulgar los secretos y las confidencias que el cliente haya compartido en el transcurso de su representación. Eliane Exp. Ltd. v. Madera Alfa, Inc., 156 D.P.R. 532, 539 (2002); Liquilux Gas Corp. v. Berríos Zaragoza, 138 D.P.R. 850 (1995); Robles Sanabria, Ex parte, 133 D.P.R. 739 (1993); In re: Carreras Rovira y Suárez Zayas, 115 D.P.R. 778 (1984); In re: Guzmán, 80 D.P.R. 713 (1958).
El deber del abogado para con su cliente, cuya génesis es el “principio de información”, significa que el abogado, además de representar a un cliente con fidelidad, lealtad y diligencia, debe siempre mantenerlo informado de todo asunto importante que surja en el desarrollo del caso cuya atención le ha sido encomendada. Colón Prieto v. Géigel, 115 D.P.R. 232, 240 (1984); In re: Cardona Vázquez, 108 D.P.R. 6, 18 (1978). Al abogado no le está permitido apartarse de esos deberes, razón por la cual, las dudas sobre asuntos de ética profesional debe resolverlas el abogado con rigurosidad contra sí mismo. In re: Valentín González, 115 D.P.R. 68, 78 (1984).
Por su parte, la doctrina de descalificación imputada o vicaria es aquélla que recae sobre un bufete completo o un grupo de abogados debido a la descalificación de uno o más de sus miembros por razón de conflicto de intereses. P.R. Fuels, Inc. v. Empire Gas Co., Inc. 133 D.P.R. 112, 119 (1993). La descalificación personal se denomina descalificación primaria y la de los demás miembros del bufete o agrupación, descalificación secundaria. Robles Sanabria, Ex parte, 133 D.P.R. 739, 749 (1993).
El objetivo principal de la doctrina de la descalificación secundaria es proteger al cliente que acude a un bufete o grupo de abogados contra violaciones vicarias de las reglas sobre conflictos de intereses. 4 L.P.R.A. Ap. IX, C. 21; Manual on Professional Conduct, 1992, a la pág. 51; Hazard, G. y Hodes, W., The Law of Lawyering, A Handbook on the Model Rules of Professional Conduct, § 1.10; 103 (2nd Edition, 1992). La protección pretende asegurar al cliente la completa lealtad de sus abogados y la de aquéllos con quienes estén afiliados. Robles Sanabria, Ex parte, supra.
Así pues, la doctrina de descalificación secundaria o imputada, promueve por un lado, el ejercicio de un criterio profesional mediante la descalificación del bufete o agrupación, de aquellas representaciones que alguno de sus miembros no pueda aceptar. Véase: Current Developments: Annual Survey of Developments in Legal Ethics Vicarious Disqualification: Second-Hand Taint, 5 Geo. J. Legal Ethics 35, 87-89 (1991). Por otro lado, protege al cliente contra el uso adverso de sus confidencias y secretos por aquellos abogados del bufete o agrupación que no participaron directamente en su representación. Id.
Los postulados de la doctrina de la descalificación imputada, sin embargo, no pueden ser igualmente reducidos a una sola regla. La descalificación del bufete o agrupación es una descalificación secundaria que responde al conflicto particular que propicia la descalificación primaria de alguno de los abogados, teniéndose que ajustarse a la variedad de conflictos que puedan surgir en cada caso en particular. Así, por ejemplo, un conflicto por representación concurrente, no representa los mismos riesgos que un conflicto por representación sucesiva. In re: Carreras Rovira y Suárez Zayas, 115 D.P.R., a las págs. 786-793.
Las normas sobre descalificación imputada están apuntaladas en supuestos de sentido común y en la experiencia de cómo trabajan los abogados que ejercen en bufetes y los motivos que llevan los abogados a compartir información y a aunar esfuerzos. Wolfram, Modern Legal Ethics, § 7.62, a las, págs. 391-396 (Practitioner’s ed. 1986). En los casos de representación sucesiva adversa, estos supuestos los recoge lo que tradicionalmente se denomina presunción de confidencias compartidas. P.R. Fuels, Inc., 133 D.P.R., a las págs. 120-121.
Es por estas razones que la presunción sólo aplica en aquellas afiliaciones o grupos de abogados caracterizadas por el libre flujo y fácil acceso a información o por incentivos considerables para que los *943 abogados compartan información entre si. Véase Hazard y Hodes, op. cit, § 1.10, a las págs. 325-326.2; Annotated Model Rules of Professional Conduct, 2da Ed.
En resumen, en casos de representación sucesiva adversa, una vez se da la descalificación primaria de un abogado, la descalificación secundaria de los abogados con los cuales está afiliado dependerá, en primer lugar, de si tal afiliación constituye un bufete o agrupación sujeto a la presunción de confidencias compartidas, y en segundo lugar, de si la modalidad de dicha presunción operante en el caso es o no refutable. De no serlo, procede la descalificación secundaria de todo el bufete o agrupación; de ser refutable, se presume la descalificación, pero corresponderá a la parte que se opone a la descalificación presentar la prueba necesaria para la refutación.
En nuestro caso, es determinante determinar, si de existir una descalificación de alguno de los abogados, también se debe imputar a otro abogado de la SAL de Aguadilla. Acorde con la comparecencia que presentó la SAL, surge que ésta es un grupo de abogados que componen una organización de servicios legales; sus oficinas regionales se caracterizan por la presencia de una empresa común, el flujo y la facilidad de acceso a información, la división de responsabilidades, la colaboración entre abogados y la estructura de gerencia o supervisión.
Siendo ello así, la consecuencia lógica sería que los abogados de una misma oficina, como en el presente caso, la Oficina de SAL de Aguadilla, colaboran estrechamente unos con los otros, de tal forma que todos, así como el director, logran familiarizarse con la información recibida en torno a los varios casos que allí se atienden, lo cual permite darle a los clientes un servicio más eficaz, en caso de que alguno de los abogados tenga que ausentarse en alguna ocasión.
El alto grado de colaboración que se ha descrito es demostrativo que la SAL lleva a cabo una empresa común caracterizada por un libre flujo y fácil acceso a información de clientes, presumiéndose que, aunque cada asunto es asignado a un abogado en particular, los demás también participan, sea en discusiones o en sustitución del abogado encargado del caso. No obstante, en este sistema operacional, los clientes son propiamente clientes de la SAL, no de los abogados particulares que integran la oficina, razón por la cual, ésta cumple con los criterios de ser considerada como un bufete sujeto a la presunción de confidencias compartidas.
Así pues, se podría concluir que existe una presunción irrefutable de confidencias compartidas, por lo cual, la descalificación de toda la Oficina de la SAL de Aguadilla, sería la mejor protección al cliente en caso de un riesgo de conflicto de intereses que es difícil de reducir mediante otras medidas preventivas.
Por otro lado, el Canon 21 del Código de Ética Profesional prohíbe tanto la representación sucesiva como la concurrente, cuando esté presente un posible o real conflicto de intereses. La representación sucesiva adversa se refiere a la descalificación del abogado individual que, luego de representar un cliente, intenta representar a otro con intereses adversos. Ese conflicto de representación ocurre cuando el abogado intenta representar a un cliente en un asunto que puede afectar adversamente los intereses de otro cliente anterior. In re: Concepción Suárez, 111 D.P.R. 486, 491 (1981)!.
Por su parte, un conflicto de intereses por representación concurrente o simultánea, según el Canon 21, se refiere a la prohibición del abogado de representar intereses encontrados. Ello ocurre cuando un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe de oponerse en cumplimiento de sus obligaciones para con otro cliente.
A tales efectos, se ha establecido que un conflicto por representación concurrente surge cuando un abogado intenta representar simultáneamente a clientes con intereses incompatibles entre sí. In re: Carreras Rovira y Suárez Zayas, 115 D.P.R., a las págs. 788-789. Al igual que en el conflicto por representación sucesiva, en la *944 representación concurrente existe un riesgo de uso indebido de confidencias. No obstante, nuestro Tribunal Supremo ha especificado que en la representación concurrente se presenta el riesgo adicional de la falta de un criterio profesional independiente. In re: Carreras Rovira y Suárez Zayas, 115 D.P.R., a las págs. 788-793.
Nuestro Tribunal Supremo ha enmarcado el conflicto de intereses por representación concurrente desde la dimensión de las incompatibilidades. Dentro de ese contexto, se ha definido incompatibilidad como equivalente a antagonismo, oposición, repugnancia que tiene una cosa para unirse con otra, o dos o más personas entre sí. También se refiere a la imposibilidad legal de simultanear dos o más cargos, funciones o misiones en una misma persona. El primer significado alude al orden físico, el segundo toca al aspecto moral, y el último al orden legal. In re: Carreras Rovira y Suárez Zayas, 115 D.P.R., a la pág. 788.
Además, nuestro Tribunal Supremo se ha referido a este tipo de conflicto de intereses en el citado caso de In re: Carreras Rovira y Suárez Zayas, 115 D.P.R., a la pág. 788, como sigue:
“En materia deontológica se acepta que uno de los requisitos para el ejercicio de la abogacía es la compatibilidad de la actuación con la situación y circunstancias. La premisa es sencilla: quien no sea independiente, no está en condiciones de ejercer la profesión. A. Fernández Serrano, De las incompatibilidades para ejercer la abogacía, Madrid, Artes Gráficas M.A.G., S.L., 1952, págs. 5-7. Frente a cualquier lucha del mundo jurídico aparecen, además de una cosa, -sea un bien, un derecho o un interés- dos o más individuos como “señores del conflicto ”. El abogado actúa siempre a la vista de tal proceso o dentro del proceso mismo. A. A. Mercader, Abogados, Buenos Aires, Eds. Jurídicas Europa-América, I960, pág. 75. La función de abogado tiene, pues, un carácter eminentemente público en cuanto constituye un órgano intermedio entre el juez, y los litigantes. A. Fernández Serrano, La abogacía en España y en el mundo, Madrid, L.I.D., 1955, T. I, pág. 65; Ramírez de Arellano v. Srio. de Hacieda, 85 D.P.R. 823, 830 (1962). El abogado es el primer enjuiciador de un pleito sobre el cual el juez pronunciará el último dictamen. Mercader, op. cit., pág. 105. ”
Como expresa el Procurador General en su comparecencia, en el caso ante nuestra consideración existe al menos la apariencia de conflicto. La SAL alega que el conflicto surgía, en vista de que al señor López Nieves se le acusaba de dar muerte a la señora madre de un cliente previo de la Oficina de la SAL de Aguadilla. Esa situación de hechos, encuadra en una representación concurrente simultánea de dos clientes que tienen intereses encontrados en la forma en que se dilucide el presente caso. Por un lado, es razonable pensar que el hijo de la occisa desea que se haga justicia con respecto a quién le ocasionó la muerte a su madre, y que caiga sobre este todo el peso y rigor de la ley. Mientras que por el otro lado, el señor López Nieves, imputado en el presente caso, tiene derecho a una representación legal libre de toda influencia o parcialidad. Esa situación coloca a la SAL en un posible conflicto de intereses encontrados en que, en beneficio de su cliente el aquí imputado, es su deber abogar por todo aquello a que debe oponerse en cumplimiento de sus obligaciones morales para con otro cliente.
En In re: Carreras Rovira y Suárez Zayas, 115 D.P.R., a la pág. 787, citando a In re: Rodríguez Torres, 104 D.P.R. 758, 765 (1976), y & In re: Guzmán, 80 D.P.R. 713, 724 (1958), nuestro Tribunal Supremo ha reconocido que este tipo de conflicto puede existir aun cuando se trate de partes contrarias en casos separados y no relacionados respecto a sus causas de acción.
Por otro lado, se ha resuelto que en una situación donde se plantee la posibilidad de descalificación de un abogado por conflicto de intereses, cualquier duda debe ser adjudicada a favor de la descalificación. In re: Coordinated Pretrial Proceedings, etc., 502 F. Supp. 1092, 1099 (1980).
En mérito de lo expuesto, expedimos el auto solicitado y revocamos la Resolución emitida por el Tribunal de Primera Instancia, Sala de Vistas Preliminares de Aguadilla, el 15 de diciembre de 2008. En consideración a *945 lo cual, devolvemos el caso a dicho foro para que sin demora de clase alguna le asigne representación legal al señor López Nieves conforme a las disposiciones del Reglamento para la Asignación de Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal, en vigor desde el 1ro de septiembre de 2008.
Adelántese inmediatamente por telefax y notifíquese posteriormente por correo ordinario.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones